## STATE v. JEFF MACE, NEWTON MACE and JOHN FLASHER.

*Evidence — Conspiracy — Declarations of Conspirators— Dying Declarations—New Trial Not Granted for Trivial Matters — Contradicting One's Own Witness — Other Crimes, When Competent to Show.*

1. The exclamation of one who is killed made simultaneously with the infliction of a mortal wound and immediately preceding his death, in the presence of his slayers, are competent evidence, both as dying declarations and as statements made in the presence of accused.

2. When a conspiracy is shown to have existed, the declarations of one conspirator are evidence against the others.

3. While it is a general rule that when a prisoner is on trial for one crime evidence of his commission of other crimes will not be admitted, still other criminal acts may be proved if they are connected with the one charged.

4. The rejection of evidence of slight importance, and which is only cumulative, is not good ground for a *venire de novo.*

5. Where evidence is admitted improperly, but the defendant afterwards admits on the trial the very fact which such evidence tended to prove, the error becomes harmless and a *venire de novo* will not be ordered.

6. While a party cannot discredit his own witness, still he can show the facts to be different from those testified to by such witness.

INDICTMENT FOR MURDER, tried at February Term, 1896, of the Criminal Circuit Court of MADISON County, before *Ewart, J.*

The defendants were convicted of murder in the second degree and appealed.

The facts appear in the opinion of the Court.

*The Attorney General* and *Mr. J. M. Gudger, Jr.*, for the State.

*Mr. Julius C. Martin*, for defendants (appellants).

MONTGOMERY, J. : The exceptions which appear on the record are confined exclusively to portions of the evidence. The charge of his Honor was not excepted to it in any particular, and it seems that the first of defendants' prayers for instructions was given with a qualification, (without objection,) and the others submitted to the jury, as asked. The defendants, Jeff Mace, Newton Mace and John Flasher, brothers, all armed with deadly weapons on a road side at night, returning from a dance, provoked a difficulty with Zeb. Whitt, the deceased, and Jeff Mace, the other defendants aiding and abetting, shot with a pistol and instantly killed the deceased. Two witnesses who were present and saw the whole affair testified that when the deceased was falling he cried out : " Oh, Lord, they have murdered me for nothing in the world !" and another ' Oh, Lord, they have killed me !" The defendants objected to this testimony. The grounds of objection were not stated, and it is difficult to conjecture what they were. The defendants and the deceased were " in a huddle," as the witness said, and the man fell almost at their feet. If the objection was that the dying man did not call the names of his slayers, the answer is that his accusation was made to their faces ; that the defendants only were just at the spot of the killing, and the exclamation could have been made only of them. But the evidence was competent as a dying declaration. In *State* v. *Baldwin*, 79 Iowa, 721, the Court said : " It has been held that where a person dying from a gun-shot declares that A. shot me, A. killed me, A is my murderer, would be admissible as a statement of a fact, because of the circumstances. To say,.

under such circumstances, ' A. is my murderer', would not be an expression of opinion with respect to the degree of the homicide, but a statement of a fact that A. had inflicted the mortal wound." The defendant also objected to the testimony of one of the witnesses who saw the homicide, and who said in substance that after the killing he went on and overtook them, the defendants; that Jeff Mace and John Flasher leveled their fire-arms upon him, and that, upon his telling them he wished to go and inform the family of the deceased of the homicide, Jeff cursed him, and told him to stop, and that he should not pass. This was about a quarter of an hour after the homicide had occurred. The objection was that the matter testified to was a distinct substantive offence, an assault with a deadly weapon upon the witness, and that it could not be admitted in evidence in support of the indictment for the homicide. That is the general rule, but there are exceptions to it. Other criminal acts may be proved if they are connected with the one charged. Evidence of a *subsequent* criminal act, connected in purpose and character with the offence charged, is admissible. Brown Cr. Law, p. 20 ; *Kramm* v *Com.*, 87 Pa. St., 301. There is a direct connection between the killing of the deceased and the assault upon the witness. The assault was for the purpose of preventing the witness from communicating to the family of the dead man the death of one of its members ; and also there can be no rational conclusion drawn from the act, except that the defendants intended to terrorize the witness, and also to escape the probable consequences of their act. And it was also competent to show that the homicide was willful, intended and malicious, and not accidental. In *Georson* v. *Com.*, 99 Pa. St., 398, the Court said of such testimony : " It cannot be received to impeach his general character, nor merely to prove a dis-

position to commit crime. Yet, under such circumstances, evidence of another offence by the defendant may be given. Thus, it may be to show the act charged was intentional and willful, not accidental; to prove motive to rebut any impression of mistake, and to connect the other offence with the one charged.

The same witness was asked by the defendants to show his bias in favor of the State and against the defendants, " Haven't you been drunk with the deceased many times ?" The solicitor objected to the question and the court properly sustained the objection, but said to the counsel that he might ask him about his habits. Besides, the witness had stated that he and the deceased were on friendly terms and were cousins. The evidence sought was only cumulative ; if evidence at all, of slight importance—too slight to constitute ground for a new trial. *State* v. *Stubbs*, 108 N. C., 774. Another witness for the State, Levi Ingle, at whose house the crowd gathered for the dance, was allowed to testify that, after the visitors had all left, some of them returned in about a half hour, and that he heard them in the edge of his yard cursing and swearing, one of them (witness did not know which) saying, " Damn him, see if I don't do what I said I would," and that the next day Jeff Mace told him that he and the other two defendants were the ones who returned to the house. The admitting of this evidence against the defendants other than Jeff Mace was error, but it was harmless, as on the trial the defendants admitted that they did return with Jeff to Ingle's house to get a jug of whiskey which they had left under a cabbage plant in the garden. The testimony of the witness Ingle as to the threat made by one of the party was competent against all of them ; for before this witness was examined evidence going most strongly to show a conspiracy on the

part of all three of the defendants to kill the deceased had been given in by other witnesses.

There was a knife found near the hand of the dead man, and there had been testimony going to show that Newton Mace placed it there after the man was killed. There was also testimony going to show that Newton, in endeavoring to cut the deceased, had by mistake cut Jeff. One of the State's witnesses had testified that there was blood on the knife blade, and the State offered another witness to show that the first witness was in error. The defendants objected. The testimony was admissible. The State was not bound by what the first witness said. The rule is that while a party cannot introduce testimony to discredit or impeach the moral character of his own witness, yet, if the facts which the witness testified to are against the party introducing him, he is not precluded from showing by other witnesses a different state of facts. *Gadsby* v. *Dyer*, 91 N. C., 311 ; *McDonald* v. *Carson*, 94 N. C., 497. McCone, a witness for the defendants, testified on his cross-examination that he heard Jeff Mace, in a crowd of four or five coming towards the dance gathering, say : "Damn Banjo Branch and everybody that lives on it ; they are nothing but a lying set of sons of d— bitches, and I intend to kill some man this night." The defendants objected because the language was not a threat against any individual. Testimony going to prove a conspiracy on the part of the defendants to kill the deceased, and which resulted in his death, had already been given in ; and also it had been proved that the defendants came on together to the dance. This threat was too general to have convicted the defendant of a conspiracy to kill, nothing more appearing, but in the light of subsequent events, the conspiracy to kill having been sufficiently proved to be submitted to the jury and its execution shown, the testimony was competent to

show that the conspiracy had been entered into before the defendants reached the house of Ingle.

The other exceptions were to the testimony going to show threats against the deceased, made before the homicide by the defendants at different times and not in the presence of each other. This testimony was not offered until the fullest proof had been received going to show that the defendants on the night of the killing had concerted and conspired to take the life of the deceased. The testimony went to prove that they sought opportunity to kill him from the time they saw him; that they called him aside from the crowd after having talked to themselves a while saying, "We have a little settlement to make with you;" that one or two of the witnesses followed, whereupon the defendants told them to stay away; that presently they went off toward Ingle's after the liquor, and returning found the deceased sitting on a bank on the side of the road; that Newton said, "Come up here, Zeb," whereupon Zeb and some of the witnesses started, when Newton said, "No, we don't want any body but Zeb." Jeff had the pistol in his hand, the other two defendants saying to the witness, "Don't bother Jeff, let Jeff alone." Jeff had his way and shot and killed the deceased. These defendants are brothers, and Flasher's threats were because of a difficulty between Jeff and the deceased. Under all the circumstances we are of opinion that the testimony was competent to show that the conspiracy was made and entered into by the defendants before the night on which it was carried out. There was no error in the rulings of his Honor.

Affirmed.