Shenkenberger v. State.

SHENKENBERGER v. THE STATE.

[No. 18,940.   Filed May 29, 1900.]

PRACTICE.—Evidence.—Offer to Prove.—Appeal and Error.—No question is presented on the ruling of the court in excluding the answer to a question propounded to a witness, where the offer to prove was not made until after the objection to the question was sustained and an exception reserved.   pp. 634, 635.

EVIDENCE.—Dying Declarations.—Criminal Law.—It is not necessary that a dying declaration be made in the presence of defendant in order to render it admissible in the trial of a murder case.   pp. 635, 636.

SAME.—Dying Declarations.—Criminal Law.—An objection to the admission in evidence of dying declarations in the trial of a murder case, on the ground that the written statement was the best evidence, was properly overruled, where it was not shown that the declaration testified to was reduced to writing.   pp. 635, 636.

SAME.—Objection.—Appeal and Error.—An objection to the admissibility of evidence which was not presented in the trial court will not be considered on appeal.   p. 636.

SAME. —Dying Declarations. — Criminal Law. — In a prosecution charging defendant with poisoning her daughter-in-law, the dying declaration of deceased testified to by a witness that "This was a strange death to die, to be poisoned by her mother-in-law" was the statement of a fact, and was properly admitted in evidence.   pp. 636-639.

INSTRUCTIONS. — Evidence. — An instruction containing language which casts suspicion upon or disparages or discredits any class of evidence is erroneous.   pp. 639, 640.

SAME. — Reasonable Doubt. — Criminal Law. — An instruction in a criminal case informing the jury that if any one of them entertained a reasonable doubt upon the evidence "the jury in such case cannot find the defendant guilty," was a misleading and inaccurate statement of the law, and was properly refused.   pp. 640-644.

APPEAL AND ERROR.—Separation of Jury.—Objection Made for the First Time on Appeal.—An objection to the action of the court in

permitting the jury to separate at its adjournments, in the trial of a murder case, will not be considered on appeal, where no objection thereto was made in the court below.   *p. 644.*

MISCONDUCT OF COUNSEL.—*Waiver.—Appeal and Error.*—A cause will not be reversed because of the alleged misconduct of counsel, where the statements objected to were promptly withdrawn by the court from the consideration of the jury and no motion to set aside the submission and discharge the jury was made. *pp. 644, 645.*

From the Clinton Circuit Court.   *Affirmed.*

*O. E. Brumbaugh* and *J. Combs*, for appellant.

*W. L. Taylor*, Attorney-General, *Merrill Moores* and *C. C. Hadley*, for State.

DOWLING, J.—Indictment for murder in the first degree by administering poison.   Pleas of not guilty, and insanity. Verdict of guilty, and punishment fixed at imprisonment for life.   Motion for a new trial overruled, and judgment on verdict.

The errors assigned, and not waived, call in question the action of the court in overruling appellant's motion for a new trial.

The specific charge contained in the indictment is that the appellant, Sarah Shenkenberger, on the 25th day of August, 1898, at the county of Clinton, in the State of Indiana, unlawfully, feloniously, purposely, and with premeditated malice, killed and murdered one Belle Shenkenberger, by then and there, feloniously, etc., administering to the said Belle Shenkenberger a deadly poison, commonly called arsenic, which the said Belle Shenkenberger then and there received at the hands of the said Sarah Shenkenberger, and swallowed, and by reason thereof died; the said Sarah Shenkenberger, then and there, well knowing the said arsenic to be a deadly poison, and wickedly intending thereby feloniously, etc., to kill and murder the said Belle Shenkenberger.

A brief narrative of the material facts shown by the evidence will, perhaps, render more easily intelligible the points necessary to be examined in this opinion.

The appellant, at the time named in the indictment, was about fifty-five years of age, was a married woman, and was living with her husband in the town of Frankfort, in Clinton county, Indiana. Belle Shenkenberger, the person alleged to have been poisoned by her, was the wife of a son of the appellant, who appears to have been a shiftless and roving character, without means, or regular employment, and with little inclination to provide for his family. As a result of his improvidence and neglect, his wife, during a large part of her married life, was compelled to make her home with his parents, going away with her husband several times, but, as often, returning to their house. On the 30th of July, 1898, after a short absence, Belle Shenkenberger, with an infant son, came back to the residence of the appellant. She was pregnant, and her health was not good. August 1st she had a miscarriage, which left her greatly prostrated. Her weakness continued, with occasional periods of improvement in her condition, but, during a considerable part of the time, she was confined to her room or bed. The appellant cooked for her, did her washing and ironing, and waited upon her. For a few days before the death of Belle Shenkenberger, her own mother, and a neighbor or two, assisted appellant in nursing and taking care of her.

On the 19th of August, 1898, appellant purchased at a drug store a nickel's worth of arsenic, ostensibly for the purpose of poisoning rats and a dog owned by a neighbor. A part of the arsenic was thus used, and the residue was placed by appellant in a bottle containing some kind of liquid, which she deposited in a closet. August 25, 1898, appellant prepared a tumbler of broken ice and water for her daughter-in-law, put a spoon in it, and placed it within her reach. Belle Shenkenberger ate some of the ice, and drank a portion of the water. Afterwards, discovering a white powder in the glass, she called the attention of her mother, Mrs. Mahala Sheridan, to the powder,

and the latter poured the remainder of the contents of the tumbler into a bottle. On the same day, Belle Shenkenberger was removed from appellant's house to the residence of a sister, in the same town, and two days afterwards she died. The symptoms of the deceased, and the character of her sufferings indicated arsenical poisoning. The appearance of the body, upon a post-mortem examination, confirmed the accuracy of those indications. An analysis of the stomach and its contents revealed the presence of about seventeen grains of arsenic. An analysis of the water poured from the tumbler into the bottle, at the time the deceased called attention to the white powder in the glass, resulted in the discovery of about seven grains of arsenic. The dying declarations of the deceased were: "I know that my mother-in-law poisoned me. That is the way I meet my death." And, "To be poisoned by my mother-in-law;" the preceding part of the latter sentence having been stricken out by the court.

The appellant offered herself as a witness, and was examined. She denied the charge against her, and gave a full and circumstantial account of her relations to her daughter-in-law, and her conduct toward her.

It was insisted, on behalf of the appellant, that there was no proof of ill feeling between her and the deceased; that they had lived together peaceably; that appellant had no motive for the crime of which she was accused; and that there was no proof connecting the appellant with the death of her daughter-in-law. On the other hand counsel for the State contended that the appellant and her husband were in straightened circumstances, and unable without great inconvenience to support the deceased and her child; that the appellant disliked the deceased and had made threats against her; that she wished to get rid of the burden of keeping, nursing, and maintaining her; and that the direct and circumstantial evidence in the case was conclusive of the guilt of the appellant.

No question is made here as to the sufficiency of the evidence to sustain the verdict. We have examined it, however, with the utmost care, and are. of the opinion that it fully justified the jury in finding the appellant guilty as charged in the indictment.

The exclusion of evidence offered by appellant is complained of as error; but, under the well settled rules of appellate procedure, the appellant is not in a position to present these rulings of the trial court for review. In each instance, the bill of exceptions shows that counsel for appellant propounded a question to the witness on the stand; that the State objected; that the court sustained the objection to the question; and that appellant, by her counsel, excepted to the ruling of the court. After this adverse ruling, and the exception to it, the offer to make the proof in response to the question followed; the offer was refused, and there was an exception by the appellant.

In *Deal* v. *State*, 140 Ind. 354, 371, and *Gunder* v. *Tibbits*, 153 Ind. 591, 607, 608, it was held that such procedure does not raise any question as to the admissibility of the proposed testimony.

In *Gunder* v. *Tibbits, supra*, p. 608, the reason why no question is raised is thus stated: "The exception to the ruling in sustaining the objection to the question presents no question, because no offer to prove by the answer to the *pending* question was made; the exception affirmed that the court had then and there, by its ruling in sustaining the objection, committed an error; no subsequent action of appellants could make the ruling erroneous if it was not so at the time; now, when the question was no longer pending, the subsequent offer to prove amounted to nothing; an exception can be reserved only to the action of the court in refusing to allow a witness, duly sworn and present, to answer a question. * * * It has been repeatedly decided that the only proper practice is to propound the question to the witness on the stand, and, if objection to

the question is made, to state to the court what the examiner proposes to prove by the witness's answer to the question, and then, if the objection is sustained, to reserve an exception to the ruling on the question. *Judy* v. *Citizen*, 101 Ind. 18; *Higham* v. *Vanosdol*, 101 Ind. 160; *Gipe* v. *Cummins*, 116 Ind. 511; *Spence* v. *Board, etc.*, 117 Ind. 573; *Kern* v. *Bridwell*, 119 Ind. 226; *LaPlante* v. *State*, 152 Ind. 80; *Sauntman* v. *Maxwell, ante*, 114; *Chicago, etc., Co.* v. *DeBaun*, 2 Ind. App. 281; *First Nat. Bank* v. *Stanley*, 4 Ind. App. 213." See, also, *Whitney* v. *State, ante*, 573.

Counsel for appellant next insist that the court erred in admitting in evidence the dying declaration of Belle Shenkenberger, as testified to by H. C. Sheridan. The evidence given by said witness, and appellant's objection thereto, as shown by the record, are as follows: "Q. You may state what she [Belle Shenkenberger] said, now, about the cause of her death? Defendant, by her counsel, objected to the question, for the reason that it is a statement made in the absence of the defendant; that it is merged in the written declaration; that the written statement is the best evidence, if there is one. The court overruled the objection, to which ruling of the court defendant, by her counsel, at the time excepted, and the witness answered. A. She said, 'I know that my mother-in-law poisoned me. That is the way I meet my death.' Q. Did she say anything about it being a strange death to die? A. Yes, sir, she gave the expression, 'This was a strange death to die.' On motion of defendant, this answer was stricken out. Q. What was the remainder of that? A. To be poisoned by her mother-in-law. Defendant, by her counsel, moved to strike the last answer from the record, for the reason that it is the expression of an opinion or conclusion. The court overruled the motion, to which ruling of the court defendant, by her counsel, at the time excepted."

To render a dying declaration admissible, it is not neces-

sary that it be made in the presence of the defendant. It may be, and generally is, made in his absence. There was no evidence or admission that the declaration testified to by the said witness was reduced to writing. It is evident that the objection to the first question propounded was properly overruled.

It is argued by counsel in their brief that the dying declaration, proved by the answer of the witness to the *first* question, was the expression of an opinion or conclusion, and not the statement of a fact. No such objection, however, was made to said testimony in the trial court, and it cannot be made here for the first time. Were the question properly before us, we would feel constrained to decide that the statement, "I know that my mother-in-law poisoned me. That is the way I meet my death," was, in form at least, the statement of a fact.

Appellant, by her counsel, moved to strike from the answer to the second question, the words "To be poisoned by her mother-in-law," for the reason that it was the expression of an opinion, or conclusion. The overruling of this motion was properly assigned as a cause for a new trial.

It is true that matters of opinion contained in a dying declaration are not admissible, and that the statement must be such as would have been competent if the declarant were sworn as a witness. *Montgomery* v. *State,* 80 Ind. 338, 41 Am. Rep. 815; *Boyle* v. *State,* 97 Ind. 322; *Boyle* v. *State,* 105 Ind. 469, 55 Am. Rep. 218; Wharton's Crim. Ev., (9th ed.), §294.

The difficulty is not in determining the rule, but in its application.

In *Boyle* v. *State,* 97 Ind. 322, and *Boyle* v. *State,* 105 Ind. 469, the declarant, answering the question, "What reason, if any, had the man for shooting you?—said: "Not any that I know of; he said he would shoot my damned heart out." It was held that this answer was not the expression of an opinion.

In *Brotherton* v. *People,* 75 N. Y. 159, the deceased at

first did not recognize the person who was disguised, but said: "When he [the latter] drew his pistol, and commenced his pranks, he knew it was the prisoner." Held not an opinion, and admissible.

In *Wroe* v. *State*, 20 Ohio St. 460, the declarant, in speaking of the fatal wound, said: "It was done without any provocation on his part." The court held that the same was not an expression of an opinion, saying: "Whether there was provocation or not, is a fact, not stated, it is true, in the most elementary form of which it is susceptible, but sufficiently so to be admissible as evidence."

The statement of the deceased in *People* v. *Abbott*, 4 West Coast Rep. 132, was that the man cut him with a knife, and he had no cause for it whatever; and it was held the statement of a fact.

The statement of the dying person in *State* v. *Nettlebush*, 20 Iowa 257, was in answer to a question whether the shot was accidental or intentional, and the answer was that it was intentional. The evidence was held competent.

In *Payne* v. *State*, 61 Miss. 161, it was held that the statement of the deceased, that the defendant shot him without cause, was not the expression of an opinion.

In *Fuller* v. *State* (Ala.), 23 South. 688, the dying declaration was: "Mr Fuller cut him to death for nothing; that he went to loose the mule, and Fuller came up, and cut him in the neck; that his knife was never open, and that he did not cut Fuller's hat." Held admissible.

It was held in *State* v. *Reed*, 137 Mo. 125, 38 S. W. 574, that a dying declaration, that the deceased was not armed at the time he was shot by the accused, was admissible.

In *Sullivan* v. *State*, 102 Ala. 135, 15 South. 264, the declaration, "He cut me for nothing, I never did anything to him," was admitted.

In *Jordan* v. *State*, 81 Ala. 20, 1 South. 577, the words were: "Jule shot me, and Handy cut me all for nothing," and were held to be competent as facts.

In *Walker* v. *State*, 39 Ark. 221, the declaration was: "Nick Walker shot me." It was proved that the declarant was shot through an auger hole at night. The evidence was held to be competent, and that it was to be dealt with by the jury.

In *State* v. *Clemons*, 51 Iowa, 274, 1 N. W. 546, the declaration was: "Ed. Clemons shot me; aint that right?" Held competent, the court saying that the testimony is to be excluded "only when the dying declaration shows upon its face that it is a mere opinion;" and that it is for the jury to say, on the whole evidence, if the deceased intended to state a fact.

In *State* v. *Saunders*, 14 Ore. 300, 12 Pac. 441, the declaration was: "He shot me down like a dog", and it was held competent.

In *White* v. *State*, 100 Ga. 659, 28 S. E. 423, it was decided that the declaration, "He shot me down like a dog", was admissible.

In *Richards* v. *State*, 82 Wis. 172, 51 N. W. 652, a declaration that the declarant was stabbed without provocation was held competent.

In *Roberts* v. *State*, 5 Tex. Ct. App. 141, the statement was: "Sam Roberts killed me for nothing." Held the statement of a fact and not an opinion, and admissible.

In *State* v. *Arnold*, 13 Ired. 184, the declaration was: "A. B. has shot me, or killed me, and none other." The court said that it must be presumed that the declarant intended to state a fact, and not an opinion; that it did not appear that deceased knew, or could know, the facts, seems to go to the credit, and not to the competency of the declarations. As they purport in themselves to disclose the facts, the court was bound to submit them to the jury.

In *State* v. *Gile*, 8 Wash. 12, 35 Pac. 417, the declaration, "they butchered me", was held admissible as the statement of a fact.

In *State* v. *Mace*, 118 N. C. 1244, 24 S. E. 798, the declaration, "He murdered me", was held admissible.

In *Lipscomb* v. *State*, 75 Miss. 559, 23 South. 210, the declaration, "Dr. Lipscomb has killed me; has poisoned me with a capsule he gave me to-night", was held to be the statement of a fact, and not an opinion, and therefore competent testimony. Whitfield, J., speaking for the court as to the admissibility of the dying declaration, said: "Any process of reasoning which seeks to distinguish between the statement, 'Dr. Lipscomb poisoned me with a capsule he gave me to-night' and 'Dr. Lipscomb killed or shot me' seemed to be a refinement not only too uncertain and visionary to serve in the practical administration of justice, but essentially inaccurate."

The expression, "To be poisoned by my mother-in-law", is a mere repetition of the first part of the declaration. "My mother-in-law poisoned me", and is, in effect, the same. Such expression is no more the statement of an opinion than are the declarations, "He shot me", "He murdered me", "He butchered me", "He cut me", which have been held admissible in many cases. The court, therefore, did not err in overruling the motion to strike the last answer of the witness from the record.

It is also insisted that the court erred in permitting the witness, Elmer E. Sheridan, who was also present when said dying declaration was made, to give the same in evidence. Said witness testified that the declarant said she had been poisoned by her mother-in-law. The record does not show that any objection was made to the introduction of this evidence, or that any motion was made to strike it out. No question concerning the admissibility of said evidence, therefore, is presented for our consideration.

It is next contended that the court erred in refusing to give to the jury instruction numbered *three* requested by appellant. This instruction, after stating certain matters which the jury should take into consideration in determining the weight of the dying declaration given in evidence by the State, concluded as follows: "So I instruct you that this

class of evidence is not so satisfactory as the evidence of the witnesses upon the stand, and it should, therefore, be carefully scrutinized."

In *Doles* v. *State*, 97 Ind. 555, the court instructed the jury that dying declarations should be weighed by the ordinary rule governing the admission of other evidence. Counsel for the defendant urged that the court should have said that "such declarations should be cautiously received and carefully scrutinized." In overruling the objection to the instruction, as given, this court said: "The caution and care with which dying declarations should be received and scrutinized seem to us to be questions for the court upon preliminary proof; but when they are received and admitted, their credibility and weight are the principal questions for the jury." See, also, *Dubose* v. *State*, 120 Ala. 300, 25 South. 185.

It is a well established rule in this State that an instruction containing language which casts suspicion upon, or disparages, or discredits, any class of evidence is erroneous. *Saler* v. *State*, 56 Ind. 378; *Line* v. *State*, 51 Ind. 172; *Lewis* v. *Christie*, 99 Ind. 377, 381, 383; *Finch* v. *Bergins*, 89 Ind. 360; *Davis* v. *Hardy*, 76 Ind. 272; *Garfield* v. *State*, 74 Ind. 60. The said *third* instruction clearly violated this rule, and the court, therefore, did not err in refusing to give the same to the jury.

The *sixth* instruction requested by the appellant was as follows: "Where a criminal cause is tried by a jury, the law contemplates the concurrence of twelve minds in the conclusion of guilt before a conviction can be had.

"Each juror must be satisfied, beyond a reasonable doubt of the defendant's guilt, before he can, under his oath, consent to a verdict of guilty.

"Each juror should feel the responsibility resting upon him as a member of the body, and should realize that his own mind must be convinced, beyond a reasonable doubt, of the defendant's guilt, before he can consent to a verdict of guilty.

Shenkenberger v. State.

"If any one of the jury, after having duly considered all of the evidence, and after having consulted with his fellow jurymen, entertain such reasonable doubt, the jury cannot, in such case, find the defendant guilty." The court refused to give the instruction, and such refusal was assigned as one of the reasons for a new trial.

It is said on behalf of the appellant that an instruction substantially like this received the sanction of this court in *Castle* v. *State*, 75 Ind. 146, and that the cases of *Clem* v. *State*, 42 Ind. 420, 13 Am. Rep. 369, *Stitz* v. *State*, 104 Ind. 359, and *Parker* v. *State*, 136 Ind. 284, sustain the claim of the appellant that the instruction should have been given.

The instruction refused combines a part of the charge held proper in *Castle* v. *State*, *supra*, with a portion of the reasoning of the court in that case. In *Castle* v. *State*, *supra*, the appellant complained that none of the charges given by the court embodied the idea that each juror must be satisfied, by the evidence, of the guilt of the defendant, before a conviction could be had. The court sustained that view, and decided that the proposition contained in the instruction asked for, viz., that "if any one of the jury, after having duly considered all of the evidence, and after having consulted with his fellow jurymen, entertains such reasonable doubt, the jury cannot in such case find the defendant guilty", was correct in point of law.

.In *Clem* v. *State*, 42 Ind. 420, the trial court had advised the jury that "no number of minds can agree upon a multitude of facts, such as this case presents, without some yielding of the judgment of individuals upon the evidence, some deference to the opinions of others, without what some might call compromise of different views. No man who is unwilling to do this within reasonable limits, and without a sacrifice of conscience, ought to have place in the jury box, or be a member of any deliberative body." In disapproving this instruction, the court said: "Each juror must act upon

his own judgment of the facts as they are presented to him, in the evidence adduced, and cannot rightfully yield his honest convictions to those of some one else, or even to those of all the other members of the jury.  *  *  *  It is the duty of jurors to consider carefully every part of the evidence, and, if necessary, reconsider it, and to hear and consider the views and arguments of their fellow jurors, but at last each one of them must act upon his own judgment, and not upon that of another."

In *Stilz* v. *State*, 104 Ind. 359, it is said: "There can be no conviction of a crime unless all the jurors are satisfied beyond a reasonable doubt of the guilt of the accused."

In *Parker* v. *State*, 136 Ind. 284, the law is thus stated: "We think the court also erred in refusing to instruct the jury, as prayed by the appellants, that so long as any juror entertained a reasonable doubt of their guilt, they could not be convicted. The jurors should have been instructed as to their individual responsibility."

The rule to be deduced from the decisions is that in a criminal case the defendant is entitled to the benefit of an instruction, to the effect that *each* juror must be satisfied by the evidence of the guilt of the defendant beyond a reasonable doubt, before he can consent to a verdict of guilty.

A glance at the instruction tendered by the appellant shows that this idea, or proposition, is three times repeated in slightly varying language. Such needless repetitions are calculated to make erroneous impressions upon the minds of the jurors, and are universally condemned. They may serve to render a charge more striking or persuasive, but their result is the undue emphasis of the proposition so re-iterated.

It is well settled that, when a legal proposition has been once clearly stated, it is not error to refuse to repeat it in different phraseology. The form of expression in a special instruction proposed by counsel may be much more forcible and impressive than that adopted by the court; but, it does

not follow that such form is to be preferred, or that it states
the law more correctly. When a special instruction is pre-
sented, the material point is the idea embodied in it, and not
the language used to express that idea. In every case, the
court has the right to choose its own mode of expression, and
to clothe its ideas in such words as it deems suitable.

In the special instruction under examination, the single
legal proposition is that each juror must be satisfied of the
guilt of the defendant beyond a reasonable doubt, before he
can consent to a verdict of conviction. This is a correct
statement of the law. The only inquiry then is, whether
this proposition was, or was not, contained in the charge as
given. The court used this language: "I instruct you that
if from all the evidence in the case, *you, each,* believe, as
jurors, beyond a reasonable doubt, that the defendant com-
mitted the acts of which she is accused, in manner and form
as charged in the indictment," etc. In our opinion, this
instruction sufficiently advised the jury as to their individual
responsibility, and that *each* of them must be so convinced
before he could consent to a verdict of conviction. No
complaint is made that the jury, as a body, were not fully
and properly instructed that they must be satisfied by the
evidence of the guilt of the defendant beyond a reasonable
doubt, before they could convict her. This admonition was
repeated throughout the charge, and in connection with
every aspect of the case. The objection taken to the decision
of the court, in refusing to give the special instruction asked
for, is that the idea of the individual responsibility of the
jurors was not made prominent enough. In this view, we
cannot concur. In our opinion, the language employed by
the court was better adapted to convey to the jurors an ade-
quate idea of their duty than that proposed by appellant.
The latter was calculated to create an impression that the
court, itself, entertained doubts as to the guilt of the pris-
oner, and feared the collective opinion of the jury. It might
easily have been understood as an intimation to one or more

of the jurors to withhold his, or their, assent from a verdict of guilty.

The instruction asked for informed the jury that, if *any one* of them entertained a reasonable doubt upon the evidence, "the jury, in such case, *cannot find the defendant guilty.*" The sentence quoted is, to say the least, an inaccurate and misleading statement of the law. In connection with an instruction as to the effect of the existence of a reasonable doubt in the mind of one or more of the jurors, the proper charge is that the juror, or jurors, entertaining such doubt, *cannot consent to a verdict of guilty.* The result, under such circumstances, is a disagreement of the jury, and nothing more. Thompson Charging the Jury, pp. 118, 120, 121; *State* v. *Hamilton,* 57 Iowa 596, 11 N. W. 5; Thompson on Trials, §§2325-2331; *Wachstetter* v. *State,* 99 Ind. 290, 50 Am. Rep. 94; *Goodwin* v. *State,* 96 Ind. 550; *Campbell* v. *People,* 109 Ill. 565; *Haney* v. *Caldwell,* 43 Ark. 184; *Sadler* v. *Sadler,* 16 Ark. 628; *Hanger* v. *Evins,* 38 Ark. 334; *Merritt* v. *Merritt,* 20 Ill. 65, 80; *Roe* v. *Taylor,* 45 Ill. 485; *Dunn* v. *People,* 109 Ill. 635; *Hamilton* v. *People,* 29 Mich. 173; *People* v. *Cowgill,* 93 Cal. 596, 29 Pac. 228; *Gardiner* v. *State,* 14 Mo. 97; *State* v. *Roberts,* 15 Ore. 187, 13 Pac. 896; 11 Ency. Pl. & Pr., pp. 288, 299, and notes.

The appellant next claims that the court erred in permitting the jury to separate at its adjournments during the trial, and that she was prejudiced thereby. In the absence of anything in the record showing the contrary, she must be presumed to have consented to such separation. No objection to such proceeding of the court was made by appellant, and consequently the question is not before us.

In the last place, a reversal is demanded on account of the alleged misconduct of counsel for the State in the closing argument.

The statements objected to were promptly withdrawn by the court from the consideration of the jury. No motion

to set aside the submission, and to discharge the jury, was made, but, upon such withdrawal, the appellant permitted the matter to drop. This course having been pursued, no available error appears in the record. *Blume* v. *State, ante,* 343; *Dehler* v. *State,* 22 Ind. App. 383.

Judgment affirmed.