## STATE v. PEARL HALL AND GARLAND HANEY.

(Filed 2 June, 1922.)

**1. Homicide — Murder — Criminal Law — Evidence — Drinking — Self-defense.**

On a trial for homicide there was evidence tending to show that the defendants concealed liquor they were carrying in a sack on seeing the sheriff and his posse approaching along the highway, and that the sheriff and one of his posse were killed by a pistol shot as he was trying to identify the defendants as others for whom he had a warrant of arrest: *Held,* evidence of the reckless conduct of the prisoners in the presence of a woman and her child at the home of the deceased member of the posse after the killing, was competent under the facts of this case to show the defendants had been drinking and were in a reckless humor.

**2. Homicide—Murder—Evidence—Self-defense.**

*Held,* on the evidence, it was competent for the State to show the number of pistol shots heard at the time, in connection with the number of empty shells found in the defendant's pistol, upon the question whether the prisoner fired in self-defense upon being arrested by the deputy sheriff.

**3. Homicide—Murder—Sheriffs—Arrest—Warrant—Evidence.**

Where in a trial for homicide there is evidence tending to show that the sheriff was unlawfully killed in arresting the defendant, while endeavoring to identify him as the one for whom he had a warrant, it is competent for the State to show that the sheriff had the warrant at the time, upon the question of his *bona fides* in so acting.

**4. Homicide—Murder—Evidence—Intoxication.**

Where a deputy sheriff has been killed by the defendant while making an arrest to find out whether he was the one for whom the officer had a warrant, evidence that the defendant had a quantity of whiskey in a sack, which he tried to hide upon seeing the officer, and as to the witness finding the sack afterwards, is material evidence, when it tends to explain the subsequent conduct of the defendant in committing the homicide.

5. **Criminal Law—Homicide—Resisting Arrest—Evidence—Dying Declarations—Res Gestæ.**

Where there is evidence that a deputy sheriff was killed while arresting the prisoner in seeking to identify him as the one for whom he had a warrant of arrest, the dying declaration of the officer that he had been killed while trying to do his duty, is competent as a part of the *res gestæ*.

6. **Same—Court's Discretion—Reopening Case.**

After the State has rested its case on a trial for a homicide, it is within the discretion of the trial judge to reopen the case and permit the defendant to offer evidence of the dying declarations of the deceased, and his refusal is not reviewable on appeal.

7. **Homicide—Murder—Evidence—Dying Declarations.**

A written statement purporting to be a dying declaration, must be shown to have been those uttered by the deceased, by competent testimony and under conditions that will cause them to come within the principles upon which testimony of this character is permissible.

8. **Same—Appeal and Error—Harmless Error.**

The refusal of the trial judge to permit the introduction of dying declarations in a trial for homicide is not reversible error when the evidence rejected does not contradict or vary testimony of this character introduced by the State.

9. **Instructions—Correct as a Whole—Appeal and Error—Criminal Law—Reasonable Doubt.**

A part of a charge on a trial for a homicide is not erroneous upon the principle of a reasonable doubt when, if taken in connection with what follows, the charge correctly states the law.

10. **Appeal and Error—Instructions—Verdict—Criminal Law—Homicide.**

Upon a trial for homicide, an instruction upon murder in the second degree, if erroneous, is cured by a verdict of manslaughter.

11. **Arrest—Criminal Law—Homicide—Warrants—Identity of Defendant—Resisting Arrest—Justification of Prisoner.**

Where a sheriff has a warrant of arrest for persons unknown to him, he may in good faith inquire of persons whom he may meet as to their identity with the names in the warrant, and they are required to answer; and upon failure to give this information the persons suspected or questioned may not upon their own default therein justify the defense of an unlawful arrest.

12. **Arrest — Criminal Law—Homicide—Instructions—Resisting Arrest—Appeal and Error.**

Where a sheriff is within his powers in making inquiries of defendants and arresting them for the purpose of identifying them as the ones for whom he holds a warrant, an instruction that the defendants had the right to use such force as reasonably appeared to them to be necessary in resisting an unlawful arrest, is favorable to the defendant, and is not a valid ground of exception.

STATE *v.* HALL.

**13. Judgments—Arrest of Judgment—Criminal Law—Homicide—Verdict —Appeal and Error.**

Where there is evidence tending to show that on the trial for homicide the two defendants acted together, as a part of a common purpose, in killing a sheriff and one of his posse in making an arrest, an instruction that if one of them should be found guilty of manslaughter, the other should be acquitted, is erroneous; and where the judge upon the mistaken application of this principle, arrests the judgment as to one upon a verdict of guilty as to both, the case will be remanded on appeal that a judgment against both may be entered, upon the verdict.

**14. Judgment—Arrest of Judgment—Verdict — Appeal and Error — Procedure.**

Where after verdict in a criminal action the trial judge has erroneously arrested the judgment and discharged the defendant, on appeal the judgment in arrest will be set aside and a writ will be ordered to issue from the Superior Court that the defendant be brought before the next term thereof for sentence upon the verdict. The procedure as to the defendant's rearrest and right of bail is given in such cases.

**15. Appeal and Error—Criminal Law—Judgment—Arrest of Judgment— State's Right of Appeal—Statutes.**

Where as a matter of law judgment in a criminal action has been given for defendant upon arrest of judgment in the Superior Court, an appeal will lie to the Supreme Court in behalf of the State. C. S., 4649 (4).

STACY, J., dissents.

APPEAL by defendant Hall from *Ray, J.,* at January Term, 1922, of CHEROKEE; and appeal by the State from arrest of judgment as to Garland Haney.

When the case was called, the solicitor announced that he did not ask for a verdict of guilty for murder in the first degree. The judge charged the jury upon the facts as to both defendants, and further told them that if they convicted Hall of manslaughter, their verdict as to Haney should be not guilty, as Haney could not aid or abet Hall in the commission of a crime committed upon heat of passion. The jury, however, disregarded this instruction, and convicted both defendants of manslaughter. Upon the coming in of the verdict the court arrested the judgment as to Haney and discharged him. From this judgment the State appealed. From the verdict of guilty of manslaughter the defendant Hall appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Fred Christopher, J. N. Moody, and Bourne, Parker & Jones for defendants.*

---

STATE *v.* HALL.

---

CLARK, C. J.  In the evidence of the State it appeared that the defendants Hall and Haney, on 18 August, 1921, were returning on foot from Georgia, both of them drinking, and Hall carrying on his back a tow sack containing a gallon of whiskey, and a jug and a fruit jar with about a quart in it.  The deceased, Allen Dean, was a deputy sheriff of Cherokee, and had in his possession a warrant for the arrest of Jack Hall and Lester Mann.  Receiving information on the night of the 18th that the defendants, Pearl Hall and Garland Haney, were coming along the road in his neighborhood, and having reason to believe that they were Jack Hall and Lester Mann named in the warrant in his possession, he summoned Charles Watson and B. L. Fox to assist him in making the arrest, and went out on the road along which they were informed the defendants were coming.  It was a clear night, the moon shining brightly. Fox was taken along, as he was the only one among the posse who knew Jack Hall and Lester Mann and could identify them if they were the defendants named in the warrant.

About 9 o'clock that night the officers saw the two men coming up the road about 80 yards off.  The defendants also saw the officers coming. Hall stopped as soon as he saw them and dropped the bag containing the whiskey alongside the road, while Haney continued to walk forward towards the officers.  Hall, after dropping his bag, also advanced along the road about 15 yards behind Haney.  Haney first met Deputy Sheriff Dean and his posse, and Watson and Fox stopped with him while Deputy Sheriff Dean went on to meet Hall.

The testimony of the witness Fox as to what occurred between Watson and Fox on one side, and Haney on the other, is in substance as follows:  As Haney attempted to pass between them, the witness and Haney both stopped and each turned facing the other.  Watson was just behind the witness and advanced further, which threw Watson to the left of Haney.  Witness said "Hello" to Haney, who replied something back which witness did not exactly understand, and witness then said, "Who is this?"  Haney not replying, the witness leaned forward to see if he could recognize him as either of the men that the deputy sheriff had a warrant for.  He saw that it was not them, and stepped back.  As he did so he saw a pistol in Haney's hand down by his right side, and Haney put his hand behind him (Haney), and his arm seemed to go under his coat, and at just that instant Watson took hold of Haney's left shoulder with his left hand, and about that time witness saw a pistol in Watson's hand presented towards Haney's hip, and Watson said, "Consider yourself under arrest."  Just as he said that Haney turned towards Watson and fired two shots.  One of them hit witness.  Watson fired the third shot.  When this was fired two other shots were fired in succession.  These

two were fired by Haney into Watson, who was killed almost instantly. The witness Fox was severely wounded by Haney.

There were no witnesses present at the killing of Dean by Hall, who was a little further along the road. Dean was not killed outright, but was mortally wounded, and died about 1 p. m. on the 20th. The dying declaration of Dean as to what occurred is substantially as follows: Dean having reasonable grounds to believe that Pearl Hall was the Jack Hall named in the warrant, which he had for his arrest, arrested Pearl to hold him until Fox could identify him. After Pearl Hall had surrendered his pistol to Dean the shooting by Haney commenced. Pearl Hall, knowing that he was breaking the law by having in his possession so large a quantity of whiskey, and knowing from the shots that Haney was arrested, wrenched Dean's pistol from his hands and shot him. Pearl Hall told Bob Henry that some voice holloaed from the upper group and said "Shoot him." After the shooting the defendant Hall made his escape to Texas, where he was arrested and brought back.

There are numerous exceptions, the first four being to the conduct and words of the defendants as they were passing the house of the deceased Charles Watson, between sundown and dark on the afternoon of 18 August. This evidence was admissible as showing the condition of the defendants at that time; that they were drinking so much as to be reckless in what they said in the immediate presence of a woman and her little girl. The evidence as to the firing of a shot and holloaing at the bridge was also competent as bearing upon the number of shells in the pistol of the defendant Pearl Hall, which was left in the possession of Dean after he had been shot.

The defendant Hall in his testimony claimed that Dean had shot at him. The State contends that the shot through the clothes of Pearl Hall was made by himself to create evidence to support his statement.

Exceptions 8 to 13, inclusive, were to the admission of testimony in regard to the warrant which Dean had for the arrest of Jack Hall and Lester Mann. This was competent and material evidence in the case.

Exceptions 14 to 18, inclusive, were to the evidence by the witness Fox as to his finding the tow sack where the defendant Hall had thrown it, and also as to its contents. This was also material evidence which explained the conduct of the defendants. Indeed the fact that the sack was thrown there by Hall and its contents were admitted by Hall.

Exception 20 is to the dying declaration made by Dean to the witness Allen Davidson, "I just only spoke to him and asked him if he knew who I was, and I said, 'I am sorry to see you in the fix you are,' and he said 'Yes, I was trying to do my duty,' and said 'I could have shot them, but I did not want to do that.'" The defendants object to the remark that he was trying to do his duty, and ask that it be stricken from the

record. The court properly overruled the objection. The declarant was an officer in the discharge of his duty, and this declaration was evidence as to the *res gestæ* of the transaction in which his death occurred. *S. v. Mace,* 118 N. C., 1244. His statement is an essential feature of the occurrence tending to show the truth of what happened, and it was proper for the jury to consider it.

After the defendants had rested their case, the State had introduced rebuttal evidence when the defendants offered in evidence a paper that purported to be the dying declaration of Dean, without identifying it in any way. The court excluded this, saying, "After the State had rested its case, the defendants moved to put in written statements as to the dying declarations of the deceased Dean, no evidence having been introduced in regard to it. The court in its discretion refused to allow the case to be reopened, and for the further reason that the paper was taken at the inquest of one Charlie Watson." It was also properly rejected because the alleged written statement of Dean did not tend to contradict any evidence for the State, and merely corroborated, if it had been duly proven, the evidence already introduced by the State that the warrant which Dean had was for Jack Hall and Lester Mann, and that when Dean approached the defendants, asked their names, and they denied that they were the parties he wanted, he found that they had pistols in their hands, and when he demanded their arrest both began shooting; the smaller man shot Charles Watson and Ben Fox, and the larger man shot him; that he was endeavoring to ascertain if they were the men he had papers for.

Exception 23 is to a part of the charge which is correct when read in connection with what immediately follows it. Exception 24 was to the definition of reasonable doubt which, in connection with what immediately followed, was correct. Exception 25 is to a statement of the contention of the State.

Exception 26 is to the charge as follows: "If the State has satisfied you beyond a reasonable doubt that it happened in the way the State contends, that he killed Dean, as the State contends from the declarations of Dean that he did, and you have no reasonable doubt of the truth of this contention, then the law presumes malice from the use of the deadly weapon, and it will be your duty to return a verdict of murder in the second degree as against him." If there had been any error in this charge it has been eliminated by the verdict of the jury.

Exception 27 is to the charge as follows as to the duties and authority of an officer having a warrant for the arrest: "If you find as a fact that Dean was an officer, making an arrest, exercising the function of deputy sheriff—an officer has a right to make an arrest and to inquire of any citizen that he may meet if he is the person named in the process he has

in possession, provided he uses good faith in making the inquiry, and the citizen has no right to mislead him or refuse to furnish him proper information upon the inquiry—and then when the officer by reason of failure to secure information upon his inquiry, which he made as an officer, as to a matter he had a right to inquire about, then the party so charged could not justify the defense of an unlawful arrest unless without fault himself." This charge was based upon the theory of the State set out in the record that Dean had reasonable grounds to believe that Hall was the Hall named in the warrant, and that Dean was holding him until Fox could come up and identify him. In this light the charge was correct. *S. v. Dunning,* 177 N. C., 559.

Exception 28 was to a part of the charge which was favorable to the defendant. The court said, "If you find the truth to be as the defendants asked you to find, that Dean asked the defendant who he was, and that he did not fit the description in the warrant, if he possessed this warrant, and that the deceased continued to put him under arrest—the court charges you that there is no evidence, as he sees it up to this time, which would warrant an arrest for an offense committed in the presence of the officer, and the defendant had a right to resist such arrest with such force as would reasonably appear necessary to him for that purpose. And you are the judges of the amount of force reasonably necessary as the facts appear to you when surrounded by the circumstances under which he was surrounded whether or not he used more force than necessary to avoid arrest, if you find he was being arrested unlawfully." This charge was favorable to the defendant. Exception 29 was to a statement of the contention of the State.

Upon a careful review of all the exceptions we find no error of which either of the defendants had a right to complain.

The court charged the jury that "the acquittal of the defendant Hall will carry with it the acquittal of the defendant Haney," and further charged the jury, "If you return a general verdict of guilty, it would encompass the defendant Hall, as charged in the bill of indictment, less the *nol. pros.* which the solicitor has entered, that is guilty of second degree murder, and that verdict would take in the defendant Haney as aiding and abetting. If you find Hall to be guilty of second degree murder, and that Haney did not aid and abet, then you would find guilty of murder in the second degree as to Hall and not guilty as to Haney. If you find that Hall be guilty of manslaughter, then it would be not guilty as to Haney, because it would be beyond possibility or legal form that the man could aid and abet in manslaughter, because it would be committed upon sudden heat of passion, and in that event you could not convict Garland Haney; but if you note a general verdict of not guilty it would be in favor of each. If you find that Hall be guilty of manslaughter, then you would not convict Haney."

The jury returned in open court a verdict of "Guilty of Manslaughter." The court held that as a matter of law under its charge to the jury that Haney could not be convicted of manslaughter, and arrested its judgment as to Haney and discharged him. From this arrest of judgment as to Haney the State appealed.

The jury evidently found a verdict of guilty of manslaughter as to both. The court, the solicitor, and 'the defendants' counsel so understood it.

It was not correct to charge the jury that both parties could not be guilty of manslaughter, and the jury having convicted both, it was in the power of the court to have set aside the verdict as to Haney, but it did not do so. On the contrary, the record states that he arrested the judgment upon the verdict as to Haney as a matter of law and the State, under the statute, had the right to appeal. C. S., 4649 (4) provides that the State may appeal "where judgment is given for the defendant upon arrest of judgment." There was no verdict of not guilty as to the defendant Haney, but on the contrary the verdict as to him was guilty, and the court, instead of setting aside the verdict as in its discretion it might have done, recognized that it had been so rendered by arresting judgment as a matter of law upon the mistaken idea that judgment could not be imposed, and not because there had been no verdict against Haney.

As to Haney, therefore, the case stands upon a verdict of guilty with no sentence imposed, and in such case, or when an improper judgment has been imposed, the case will be remanded to the Superior Court that sentence shall be imposed by the presiding judge upon the verdict entered upon the record that there may not be a default of justice. In *S. v. Queen,* 91 N. C., 660, where an improper judgment was imposed upon a conviction, the court held that the defendant was not entitled to be discharged, but he was to be remanded for a proper sentence to be imposed. In *S. v. Lawrence,* 81 N. C., 522, where also there was an illegal sentence imposed, the court held that the defendant should be remanded to the Superior Court that a proper judgment should be imposed upon the verdict. In the present case there was not any illegal sentence imposed, but there was a failure to impose any sentence upon the verdict which was left standing upon the docket.

Upon receipt of the certificate of this opinion, a writ will issue against the defendant on which he may give bond for his appearance at the next term of the Superior Court of Cherokee that sentence may be imposed upon the verdict of guilty in compliance with law.

The judge in this case properly told the jury that if they acquitted Hall they would necessarily acquit Haney also, as the indictment was for aiding and abetting Hall in the murder of Dean, but as Hall's crime

stops short of the greater offense through interfering circumstances, the defendant Haney, as the jury properly held upon the evidence, was at least guilty of aiding and abetting in the lesser offense of manslaughter. Indeed he seems to have done fully as much of the shooting as Hall, if not more, according to the testimony. In *S. v. Cloninger,* 149 N. C., 567, it was held: "When one of the prisoners was present at the time when the deceased was killed, and, with the others, followed deceased, cursing him, and got a baseball bat away from him, with which another person struck the fatal blow, there is abundant evidence to sustain his conviction of manslaughter as an aider and abetter."

The same principle is laid down in *S. v. Worley,* 141 N. C., 764, where the court charged that, "If Clem Worley aided and abetted Thomas Worley in an assault on the deceased, then he would be guilty of murder in the second degree, manslaughter or excusable homicide according as Thomas was guilty or excusable. To same purport *S. v. Orr,* 175 N. C., 773.

In Bishop New Crim. Proc., sec. 1285, n. 68, it is said that a motion in arrest of judgment for a defect in a verdict lies only when the verdict does not conform to the indictment. If the verdict is wrong, the motion in arrest of judgment does not lie. Where the indictment is for being an aider and abetter in murder in the second degree, the jury could have so found or found, as it did, that he was guilty as aider and abetter in manslaughter. In the work just quoted, sec. 1288, it is said: "But if the indictment is good and the arrest of judgment is because of wrong verdict, only the verdict will be vacated and a new trial will be ordered." But it is clear upon the above authorities, and upon the reason of the thing, that here there was no wrong verdict, but it was based upon the indictment, and the only error was in the court arresting the judgment, which must be corrected by the defendant being brought up for sentence upon the verdict found by the jury, and which stands untouched upon the record.

Upon the evidence it seems clear that both of the defendants were expecting an arrest from the parties whom they met on the road on account of the whiskey they had with them; else why should Hall have hidden the whiskey? The officer and his posse approached the defendants with the evident intention of arresting them. They made common cause as to this when they saw the officers coming. When Haney opened fire upon Watson, it was a signal to Hall, who was further back, to take part in any difficulty, and he therefore wrenched the pistol from Dean and shot him. The judge thought that there was sufficient evidence in the case to submit to the jury the question of Haney's guilt as the aider and abetter of Hall in his commission of murder in the second degree. The jury took the most lenient view of the case and convicted

them both of manslaughter. The defendant Haney quotes *S. v. Eaves,* 106 N. C., 757, which holds that: "An arrest of judgment can only be granted for defect appearing upon the face of the record; or for the omission of some matter which ought to so appear." *S. v. Hinton,* 158 N. C., 625; *S. v. Jenkins,* 164 N. C., 527. But here is no defect upon the face of the record and no omission of anything which should so appear. There was no defect appearing upon the face of the record in this case, for the trial and the verdict as to both defendants were ·in accordance with law, and the State is entitled to have the judgment in arrest as to the defendant set aside that the proper sentence may be imposed upon the verdict.

As to the defendant Haney, the judgment in arrest must be set aside and a ·writ will issue from the Superior Court of Cherokee that he be brought before the next term of the Superior Court for sentence upon the verdict against him.

As to the defendant Hall we find

No error.

STACY, J., dissents.