W. H. IVEY, ADMINISTRATOR OF WILLIAM HENRY VALENTINE, DECEASED,
v. EASTERN COTTON OIL COMPANY.

(Filed 24 September, 1930.)

**Master and Servant C b——Evidence in this case held insufficient to be submitted to the jury and nonsuit was proper.**

> Evidence tending to show that the deceased was employed by the defendant to keep seed from choking steel tunnels in the defendant's seed house, and that the deceased was found dead in the bulk of seed, without evidence of a slide of seed precipitating the deceased into the tunnel, but to the contrary that the deceased's pitchfork was sticking up in the seed at the mouth of the tunnel after the accident, with testimony of a physician who examined the body that he could not tell whether the deceased died from heart failure or smothering, with further evidence that the seed house was properly constructed and the methods of work were approved and in general use, ·is *held:* insufficient to be submitted to the jury, and defendant's motion as of nonsuit was properly allowed.

CIVIL ACTION, before *Small, J.,* at June Term, 1930, of HALIFAX.

The defendant owned and operated a seed house in Weldon. This house is about 200 feet long, 60 feet wide, and 50 feet high, and during the operating season is kept practically full of seed. The seed are conveyed to said seed house by mechanical conveyers which take the seed up and dump them in the top of the house by means of a chute which enters the house on the west side near the top. Along the center of the room there is a steel tunnel constructed over the conveyers, which carry the seed from the seed house, in order to protect the workmen feeding seed into the conveyers. The sides of the tunnel are open for a space of about two feet above the floor in order that seed may roll into the conveyers through this opening. Employees are stationed inside the tunnel charged with the duty of preventing the seed from choking the openings. In December, 1928, the deceased Valentine was working on top of the seed and assigned to the duty of keeping the seed away from the gin chute. The pile of seed apparently was approximately forty feet high. In order· to perform his duties the deceased used a pitchfork to throw the seed into a funnel-shaped hole extending from the top of the pile of seed to the floor. A witness for plaintiff testified: "Everything was working all right when somebody's hat came where I was feeding. I picked it up and looked at it. It came on down on the seed from where Valentine was standing. . . . I picked it up and turned it over and ran to the door where the man who runs the elevator was and asked him whose hat it was. He said it was Valentine's hat." In a few minutes the body of the deceased rolled down with the seed near the conveyer. "When Valentine came down with the seed his face was all sweaty and snuff and cotton seed were in his mouth when they got him up."

There was evidence that the pitchfork used by the deceased was sticking up in the pile of seed at or near the place where he was working a few minutes before he disappeared.

Dr. Lassiter, a physician, was called and made an effort to resuscitate the deceased by artificial respiration. The said physician testified: "I do not know for sure whether he died from being smothered or from heart failure."

The uncontradicted evidence tended to show that the seed house was properly constructed for the business carried on, and that the methods. of doing the work were approved and in general use.

At the conclusion of the evidence there was judgment of nonsuit, and the plaintiff appealed.

*Travis & Travis for plaintiff.*
*Spruill & Spruill and George C. Green for defendant.*

BROGDEN, J. The only question of law presented is whether there was sufficient evidence of negligence to be submitted to the jury. The sole element of negligence relied upon as a basis of liability is whether the cotton seed caved in, thus precipitating the body of plaintiff's intestate into the funnel where he was smothered by the crushing flow of the seed. The evidence, however, does not disclose a slide of seed at the time the body of plaintiff's intestate was discovered. Indeed, the uncontradicted testimony tends to show that the fork used by the deceased was standing up in the pile of seed at or near the place where he was working a few minutes before his body rolled into the tunnel below. This physical fact tends to negative the theory of a seed slide into the funnel. Furthermore, the physician who examined the body shortly after death declared that he was uncertain whether the deceased "died from being smothered or from heart failure." Therefore, the evidence viewed in a liberal light, fails to disclose the essential fact of negligence as the proximate cause of the death. Thus, ultimate liability rests exclusively upon conjecture. Under such circumstances the rule of law established by an unbroken line of judicial declaration is that "evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it is so, is an insufficient foundation for a verdict and should not be left with the jury." *S. v. Vinson*, 63 N. C., 335; *Wittkowsky v. Wasson*, 71 N. C., 451; *Byrd v. Express Co.*, 139 N. C., 273, 51 S. E., 851; *Warwick v. Ginning Co.*, 153 N. C., 262, 69 S. E., 129; *Pangle v. Appalachian Hall*, 190 N. C., 833, 131 S. E., 42; *Wilson v. Lumber Co.*, 194 N. C., 374, 139 S. E., 760; *S. v. Swinson*, 196 N. C., 100, 144 S. E., 555.

The case at bar is somewhat similar to *Warwick v. Ginning Co.*, *supra*. In that case "the seed slipped or gave way and plaintiff's foot was drawn into the conveyer and injured." Recovery was denied upon

FIELDS v. INSURANCE CO.

the theory that the plaintiff had equal knowledge with the defendant of the conditions surrounding the work and was permitted to do his work in his own way—the Court remarking, "There is no special knowledge required to throw the seed in a hole."

Upon the whole record, we are of the opinion that the judgment of nonsuit was proper.

Affirmed.