JOSEPH SAMPSON, ADMINISTRATOR OF THE ESTATE OF CAIN B. THOMPSON, DECEASED, v. JACKSON BROTHERS COMPANY, INCORPORATED, AND WILLIAM S. GORDY, JR.; W. N. JACKSON, AND L. R. VARSER, RECEIVERS FOR JACKSON BROTHERS COMPANY, INCORPORATED.

(Filed 26 October, 1932.)

1. **Trial D a—On motion of nonsuit all evidence is to be considered in light most favorable to plaintiff.**

   On a motion as of nonsuit all the evidence, whether offered by the plaintiff or elicited from defendant's witnesses, is to be considered in the light most favorable to the plaintiff and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

2. **Master and Servant E a: E b—Under C. S., 3467, contributory negligence does not bar recovery and the act applies to logging roads.**

   The provisions of C. S., 3467, that in personal injury cases against a railroad company contributory negligence of plaintiff will not bar recovery but merely minimize the damages, and the provisions of C. S., 3465, abrogating the fellow-servant rule and imposing liability for injuries caused by defective appliances are applicable to tram or logging roads under the provisions of C. S., 3470.

3. **Master and Servant E b—Evidence held insufficient to be submitted to jury in action against logging road for wrongful death.**

   Where the evidence in an action against a logging road is to the effect that the plaintiff's intestate was killed in the course of his employment by being struck by the defendant's train in the day-time at a place where the track was straight and unobstructed for several hundred yards, that the noise made by the moving train and signals given by it of its approach could have been heard for a considerable distance and that the defendant was apparently in possession of his faculties, and there is no evidence that he was in a helpless condition upon the tracks: *Held,* the evidence is insufficient to be submitted to the jury on the issue of defendant's negligence, and the fact that the defendant failed to have a watchman or lookout upon the back of the train does not alter this result.

**4. Pleadings G a—Allegations must be supported by evidence in order to avail the pleader.**

The allegations of the complaint must be supported by sufficient evidence introduced at the trial in order to avail the pleader.

**5. Master and Servant E b—Where person is not helpless on track and is not oblivious to danger doctrine of last clear chance does not apply.**

Where there is no evidence that the plaintiff was on the defendant's track in a helpless condition or that he was oblivious of the danger of the defendant's approaching train, or that the defendant was guilty of negligence occurring after the plaintiff's contributory negligence, the doctrine of last clear chance does not apply.

**6. Trial D a—Evidence raising mere surmise, guess, conjecture or speculation is insufficient to be submitted to the jury.**

The verdict of the jury must rest upon facts proven and not on mere surmise, conjecture, guess or speculation.

APPEAL by plaintiff from *Barnhill, J.,* at June Term, 1932, of ROBE-SON. Affirmed.

This is an action for actionable negligence brought by plaintiff, administrator of Cain B. Thompson, deceased, against defendant, alleging damage.

The plaintiff, as administrator, instituted this suit against the Jackson Brothers Company, Incorporated, to recover damages for the wrongful death of the plaintiff's intestate, which occurred on 10 July, 1930, while the plaintiff's intestate, Cain B. Thompson, was in the employ, and working for the defendant, Jackson Brothers Company, Incorporated, upon one of its railroad tracks in Brunswick County, North Carolina. Thereafter, the above named receivers were duly made parties defendant in the action.

The plaintiff alleges, in part: That Jackson Brothers Company, Incorporated, were the owners and operators of a large lumber manufacturing plant in Brunswick County, North Carolina, and in connection therewith, were the owners and operators, as aforesaid, of many miles of railroad and logging road, over and upon which they operated locomotives, propelled by steam, to use for the purpose of conveying logs and freight from one point to another, in and through the counties of Brunswick and Columbus, North Carolina. That on 10 July, 1930, the said Cain B. Thompson, deceased, as an employee of the defendant, Jackson Brothers Company, Incorporated, under the directions of the said defendant, was assigned to work on one of the defendant's railroad tracks in Brunswick County, and among other things, was assigned to do repair work upon the track, in the nature of fastening down to the

cross-ties, the tee irons upon said railroad, and to tighten and adjust properly, the taps, or nuts upon said tee iron, and to clean down the said right of way of the defendant, and to keep extinguished any fires that might originate on or near said railroad track, or right of way, and to perform other duties in the way of repairing and general upkeep of said railroad. That on 10 July, 1930, and while the said Cain B. Thompson, deceased, was performing his said duties, as aforesaid, under the instructions and directions of the foreman, the said Cain B. Thompson, deceased, went upon the railroad tracks of the defendant, and while performing his duties, as aforesaid, and while down upon said track, in an apparent helpless condition, the defendant, Jackson Brothers Company, Incorporated, through its agents, servants and employees, boss and foreman, caused to be operated upon its said railroad track, at the point where Cain B. Thompson was assigned to perform his duties, a long line of railroad, or logging cars, and caused the said cars to be backed along the defendant's railroad track, without having, or placing upon the front car, a person, or persons, to warn the plaintiff's intestate of the approach of said car, or cars, or without sounding some whistle, or horn, or bell, or giving some signal for the purpose of warning the said Cain B. Thompson, deceased, of the approach of said cars, or train, and thus negligently, carelessly, unlawfully, and wantonly caused said cars, or car, to be backed over and upon the said Cain B. Thompson, deceased, lacerating, wounding and mangling his body so severely until the said Cain B. Thompson died in a few minutes thereafter, as a result of said injuries, all of which was done while the said Cain B. Thompson was down upon said track, performing his duties, or in a helpless condition upon said track. The plaintiff set forth many acts of negligence founded on the above allegations, and prayed judgment in the sum of $3,000.

The defendants denied the material allegations of the complaint and alleged that it used due care and the plaintiff's intestate was guilty of contributory negligence.

The evidence on the part of plaintiff was to the effect that the view of defendant's logging road in both directions for a considerable distance was unobstructed and the road was level at the place where plaintiff's intestate was killed—straight in both directions two or three hundred yards from the way the train was coming and some four or five hundred yards the other way. Plaintiff's intestate was killed in the day, about 12:30 o'clock just after the dinner hour.

Luther Hunt, brother-in-law of the deceased, a witness for the plaintiff, testified, in part: "I gave Cain (plaintiff's intestate) and Bonnie Sampson a water bucket, crowbar, hammer and track wrench and sent

SAMPSON *v.* JACKSON BROS. CO.

them off to watch for fire up and down behind trains and to keep track in repair, instructing them if track happened to spread to spike up the track where it would spread, to bring it back to proper gauge, and if the joints got loose, to tighten them. . . . There was blood on the cross-ties on the outside of the rail, on the right-hand side. . . . At the point where the blood was on the cross-ties there was stringers under the cross-ties, putting the T-irons twelve or eighteen inches above the ground. (Cross-examination.) I heard *the whistle several times* as the logging train came down from the woods just before the four signals were given, the usual signals to warn employees and those that were out there on or near the tracks that the logging train was approaching. I don't remember whether it blew when close up or not. *I heard it coming two or three miles down the road.* I was pretty near against where the wreck was, about a quarter of a mile. I couldn't see the train or hear it coming all the way. *The deceased was familiar with the tram-road,* for the space of time he had been there, about a week and a half, and was out there for the purpose of keeping the tracks clear."

Bonnie Sampson, a witness for plaintiff, also a brother-in-law of deceased, testified, in part: "I was about five or six hundred yards, something like that, away when the deceased was run over. . . . I did not see the train when it ran over deceased, I saw it as it was going over him. It was coming toward me, reached deceased first. I saw deceased under the train; one of the wheels was on him; train was going backward with fifteen or sixteen empty cars. Deceased was on the outer edge of the track, *the same track deceased and I were working on,* one of the cars had passed over him when I got to him. . . . Deceased and I carried wrenches and buckets all along and deceased *had a wrench and bucket and he was walking up and down the track and he was in a normal condition;* I saw deceased about three-fourths of an hour before he was hurt. We had just got through with dinner and I left deceased standing there on the track when I went off for water. *When I next saw him he had already been struck* and was trying to get away from the right-hand side of the cars; I don't know how he got there. . . . *I did not see deceased before train ran over him. I heard the train blow all along,* signals warning people the train was coming into the woods after timber, and irrespective of the whistle the roar of the train could be heard a good ways off, two or three miles. . . . In returning to the track after getting the water I approached on the same side where deceased was killed, but didn't see him until the train was running over him. If deceased had been standing up I could have seen him."

The defendant introduced no evidence. The judgment of the court below was as follows: "This cause coming on to be heard and being heard before his Honor, M. V. Barnhill, judge presiding, and a jury, at the June Term, 1932, of the Superior Court of Robeson County, and the defendant's counsel having in apt time made motion for judgment as of nonsuit at the close of the plaintiff's evidence and after plaintiff had rested its case, and the court being of the opinion that plaintiff, upon the evidence offered to the court and the jury, was not entitled to recover on the issues raised by the complaint: It is therefore, on motion of Johnson & Floyd, attorneys for the defendants, considered, adjudged and decreed that said action be and the same is hereby dismissed as of nonsuit."

The plaintiff excepted, assigned error to the judgment as signed, and appealed to the Supreme Court.

*W. S. Britt and Dye & Clark for plaintiff.*
*Johnson & Floyd for defendants.*

CLARKSON, J. The defendant introduced no evidence, and at the close of plaintiff's evidence made motion as in case of nonsuit, C. S., 567. The court below sustained the motion, and in this we see no error.

It is the settled rule of practice and accepted position in this jurisdiction that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

The evidence on the part of plaintiff was to the effect that defendant operated a logging road.

C. S., 3467, provides that contributory negligence is no bar but mitigates damage, and under C. S., 3470, this section is applicable to logging and tram roads. *Stewart v. Lumber Co.,* 193 N. C., 138; *Hawkins v. Lumber Co.,* 198 N. C., 475. C. S., 3465, is to the effect that railroads are held liable where the injuries are sustained through negligence of fellow-servants or defective appliances. The track for a considerable distance, several hundred yards, was straight and level in both directions from where the plaintiff's intestate was killed. The evidence was to the effect that it was the plaintiff's intestate's duty, and he was given the implements and instructed "to watch for fire up and down behind trains and to keep track in repair." Plaintiff contends that the death of his intestate, in the exercise of due care, could have been avoided by the

14—203

defendant, had it stationed upon the front car of its backing train a person, or persons, to give the proper warning and signal of the approach of said long line of cars then being backed over the defendant's track.

But the evidence on the part of the plaintiff's witness is to the effect *"I did not see deceased before the train ran over him.* I heard the train blow all along, signals warning people the train was coming into the woods after timber, and irrespective of the whistle the roar of the train could be heard a good ways off, two or three miles."

Plaintiff also contends that in the day-time a logging train in the woods, when backing must have a person, or persons, stationed upon the front car backing to give warning to employees working or walking on the track. That in *Sawyer v. R. R.,* 145 N. C., at p. 27, the following principle is laid down: "And it is well established that the employees of a railroad company engaged in operating the trains are required to keep a careful and continuous outlook along the track, and the company is responsible for injuries resulting as a proximate consequence of their negligence in the performance of this duty," citing authorities. In the present case, the evidence as to warning was not only the blowing and signal warnings and irrespective of the whistle "the roar of the train could be heard a good ways off . . . two or three miles."

We can find in the record no evidence to sustain plaintiff's allegations that plaintiff's intestate was "down upon said track performing his duties or in a helpless condition upon said track." Nor was there any evidence that plaintiff's intestate was so absorbed and engaged in his work that he was "oblivious to his surroundings." The evidence does not support the allegations in plaintiff's complaint. There must be proof to sustain the allegations.

The humanitarian principle is set forth in *Jenkins v. R. R.,* 196 N. C., at p. 469, as follows: "If the jury found from the evidence that deceased by his own negligence contributed to the injuries which resulted in his death, then there was evidence from which the jury could have further found that notwithstanding such contributory negligence, the proximate cause of such injuries was the failure of defendants to exercise due care, after deceased could have been discovered, sitting on the end of the cross-tie, in an apparently helpless condition, to stop the train and thus avoid the injuries to deceased. The principle upon which the doctrine of the 'last clear chance' is found, is recognized and enforced in this jurisdiction, as just and necessary for the protection of human life. *Redmon v. R. R.,* 195 N. C., 764." *Davis v. R. R.,* 187 N. C., 147; *Buckner v. R. R.,* 194 N. C., 104; *Caudle v. R. R.,* 202 N. C., 404.

The *Jenkins case, supra,* is not applicable to the facts in the present case, nor is *Sawyer v. R. R., supra,* cited by plaintiff. In the *Sawyer case,* the evidence was to the effect: "The train, with the skidder on the front car, was at this time being backed down the track toward plaintiff at the rate of about two miles an hour, and could have been stopped within a distance of fifteen feet; that as plaintiff and Billie Boyd were so moving down the track to take protection in the skidder, they were struck by a bolt of lightning, Boyd being instantly killed and plaintiff knocked down and rendered unconscious, remaining so until he was run over by the train. The place where the plaintiff fell and remained upon the track was seventy-five yards ahead of the moving train, on a straight track and in view of the hands and employees on the train, if any had been looking." The Court said at pp. 29-30: "A negligent act of plaintiff does not become contributory unless the proximate cause of the injury; and, although the plaintiff, in going on the track, may have been negligent, when he was struck down and rendered unconscious by a bolt of lightning his conduct as to what transpired after that time was no longer a factor in the occurrence, and, as all the negligence imputed to defendant on the first issue arose after plaintiff was down and helpless, the responsibility of defendant attached because it negligently failed to avail itself of the last clear chance to avoid the injury; so its negligence became the sole proximate cause of the injury; and the act of plaintiff in going on the track, even though negligent in the first instance, became only the remote and not the proximate or concurrent cause. This responsibility of a defendant by reason of a negligent failure to avail itself of the last clear chance to avoid an injury is sometimes submitted to a jury under a separate issue; and, while it is sometimes desirable, it is not always necessary so as to prevent it, and the trial judge, in his discretion, as he did in this instance, may submit the proposition and have same determined by his charge on the issue as to contributory negligence." *Lassiter v. R. R.,* 133 N. C., 244, cited by plaintiff and *Inge v. R. R.,* 192 N. C., 522, are distinguishable from the case at bar.

The matter is fully discussed by *Clark, C. J.,* in *Moore v. R. R.,* 185 N. C., 189, at p. 190, we find: "In *Lassiter v. R. R.,* 133 N. C., 244; *Smith v. R. R.,* 132 N. C., 819, and *Peoples v. R. R.,* 137 N. C., 96, the distinction is clearly recognized between the presumption which arises when a person in the apparent possession of all his faculties is seen walking on the track and the duty owed to one of the railroad employees who is absorbed and engrossed in his work. In the *Lassiter case, supra,* the conductor of a freight train had his back to an approaching shifting engine, and while engaged in giving orders to his men on his own train, stepped in front of the box cars attached to the shifting engine and was

run over and killed. The Court held that it should have been left to the jury on the issue of the last clear chance, as defendant was negligent in having no watchman to notify the engineer of the shifting engine, for it is the duty of the defendant company to keep a lookout. On page 249 of that case, it is said in words very applicable to this case: 'The intestate was at a disadvantage, was not upon equal opportunity with the defendant to avoid the injury, for his manner and conduct showed that he was oblivious to his surroundings and was engrossed in the management of his train and his crew, . . . his action showed that he did not hear the bell ringing, . . . the condition of the intestate was as helpless as if he had been asleep or drunk on the track, and the defendant owed him at least as high a duty as if he had been asleep or drunk.' "

A verdict or finding must rest upon facts proven, not on surmise, conjecture, guess or speculation. We do not think the evidence sufficient to be submitted to a jury, and the humanitarian doctrine of the last clear chance is not applicable in this case. The judgment of the court below is
    Affirmed.