## STATE v. H. LEE SHELNUTT.

(Filed 20 March, 1940.)

**Forgery § 6—Evidence held insufficient to prove that defendant had forged any one of the checks specified in the indictments.**

> Defendant was prosecuted on indictments, consolidated for trial, charging him with forging nine checks. The State introduced testimony of a confession made by defendant to the effect that he had forged numerous checks, but failed to identify any of them as a check described in the indictments, and introduced recordak copies of checks having instances of pairs of checks in similar amounts, one of each of which the State contended was forged by defendant, without evidence that the signatures of any particular one of them was forged. *Held:* The evidence is insufficient to prove that defendant had forged any one of the checks specified in the indictments, and defendant's motion to nonsuit should have been granted.

APPEAL by defendant from *Warlick, J.,* at August Term, 1939, of POLK. Reversed.

The defendant was indicted, in separate bills, for forging and uttering nine checks, drawn on various banks, and purporting to be signed by J. N. Jackson. The indictments were consolidated and tried together.

The evidence, pertinent to the decision of the Court, tended to show that the defendant was employed by Jackson & Jackson, Inc., dealers in cotton goods, in the capacity of secretary, but without authority to sign checks. He did, however, have general charge of the accounts, attended to the mails, drew checks for various purposes, including pay roll checks, to be signed by J. N. Jackson, president of the company, and presented checks at local banks and received cash therefor.

The evidence is contradictory as to the instigation of an audit, the State's evidence tending to show that J. N. Jackson brought it about on account of evidence of a shortage attributable to Shelnutt, the defendant's evidence tending to show that the latter asked for it because the books were "in a mess." When the auditor arrived, as his testimony tended to show, he called on defendant to explain discrepancies in the accounts and the absence of vouchers and supporting data. He testifies that defendant confessed to him that he (defendant) had obtained a large amount of money, some $20,000, from the corporation wrongfully. Pressed to explain this more particularly, witness said defendant admitted it had been obtained on forged checks, by using the name of J. N. Jackson, Sr., and admitted that he was an expert at that sort of thing, and illustrated to the witness his ability to imitate the signature of Jackson, so that witness was unable to judge which signature was genu-

ine and which false. There was other testimony to this confession. Defendant admitted, according to this witness, the practice of making out similar pay roll checks, one to be genuine, one to be forged, the genuine of which he would present to one bank, the spurious ones to another, and receive the money on both. The evidence tended to show that he took the forged checks out of the enclosure containing the bank statements. If not destroyed, they were not available in evidence at the trial.

Recordak or photostatic copies, made in the course of business by the banks, of the nine checks described in the consolidated indictment, were introduced in evidence, but no one to whom they were exhibited would express the opinion that the signatures were not genuine. .

The State relied upon the alleged confession of defendant that he had committed forgeries of this kind in withdrawing approximately $20,000 of the corporation's money, and upon such evidence as the circumstances afforded, including items in approximately similar amounts constituting discrepancies in the account, and appearing in photostatic copies of the checks.

In the testimony of the auditor the following appears with reference to such items: "Several times I took items that there were no checks appearing for and asked him, and each time I asked him he said: 'That is one of those items.' He said that the check was gone . . . that he had destroyed them." This witness further testified as to the purported confession: "He said in drawing these checks for the pay roll and for himself that he drew a check on one bank, and would ask Mr. J. N. Jackson to sign that; that he would cash that check either in the Bank of Landrum or Tryon; then in a day or two, or the same day, or earlier, he would write another check for a like amount and cash it at the other bank, and that he would sign J. N. Jackson's name to that check, which was for a like amount, either $137.50, $275.00 or $115.00, or $137.50, less social security, or $352.00 less social security, combining both together. He said that if he got the check Mr. Jackson signed cashed at Landrum, then he would get the check he signed Jackson's name to cashed at Tryon."

At the conclusion of the State's evidence, and at the conclusion of all the evidence, the defendant made a motion for judgment of nonsuit, which was overruled, and defendant excepted. There was a verdict of guilty, and, from a sentence to State Prison for a term of three years, defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State, appellee.*

*Hamrick & Hamrick and Massenburg, McCown & Arledge for defendant, appellant.*

SEAWELL, J. We have not attempted to set out the evidence in detail, or to call attention to other parts of the State's evidence which might offer a speculative suggestion of defendant's guilt. He was tried for forging and uttering the specific checks described in the indictment, and the fact, if true, that he had forged a multitude of them in wrongfully converting his employer's funds does not identify the nine checks with which the investigation was concerned as being so forged and uttered, but only induced a speculative, not a probative persuasion that they were forged. *Sampson v. Jackson Bros.*, 203 N. C., 413, 166 S. E., 181; *Ivey v. Cotton Oil Co.*, 199 N. C., 452, 154 S. E., 740; *S. v. Vinson*, 63 N. C., 335. Persons are not retired from society because they are criminals or because they have committed crimes one or many, but only upon conviction of the specific crime of which they are charged.

It is not necessary to go into the refinements of law relating to the necessity of proving the *"corpus delicti,"* and whether it may be established by a confession alone. The State, having charged the defendant with forging these specific checks, and the defendant never having made any specific reference to them in any confession, or made any statement from which they might be segregated or identified, his admissions are not available for the necessary purpose of identification. If we consider the checks described in the indictment as present through recordak or photostatic copies, the efforts of the State to produce proof that the signatures to them were forged were unsuccessful.

The evidence, considered in its most favorable light to the State, will not sustain conviction.

The motion for nonsuit should have been allowed, and the judgment overruling the motion is

Reversed.