### STATE v. LONNIE MELTON TODD.

(Filed 2 December, 1942.)

**1. Criminal Law § 52b—**

Upon a motion of nonsuit, in a criminal action, the evidence is to be considered in the light most favorable for the State, but evidence which merely suggests the possibility of guilt, or which raises only a conjecture, is insufficient to require submission to the jury.

**2. Criminal Law § 34a—**

While the State, by offering in evidence a statement of a defendant in a criminal action, is not precluded from showing the facts were different, it presents the statement as worthy of belief.

**3. Criminal Law § 52b: Homicide § 25—**

In a prosecution of several persons for murder, where the State based its entire case against this defendant upon his written statement, which admitted that he drove the automobile, in which all defendants were riding, to the scene of the crime and that the two, who perpetrated the crime, got out and entered the filling station of deceased, shot him to death, and robbed him, the entire statement tending to relieve this defendant from any guilty knowledge of their purpose and failing to afford any substantial evidence that he aided or abetted in the perpetration of the robbery or murder, his motion of nonsuit should have been sustained.

APPEAL by defendant from *Thompson, J.,* at May Term, 1942, of COLUMBUS. Reversed.

The defendant was convicted of murder in the first degree in connection with the felonious slaying of Ira L. Godwin. At the same time

two others, F. C. Bonner and Junior Fowler, were also convicted of the murder of Ira L. Godwin. The appeals of Bonner and Fowler were considered at this term (*ante,* 344). Separate indictments against the three named defendants and one McDaniel were consolidated for trial. McDaniel was acquitted.

There was evidence tending to show that the deceased was shot and killed in the perpetration of a robbery. The only evidence offered to connect the defendant Todd with the murder was his own statement, which was reduced to writing and signed by him, the material parts of which may be stated as follows: On 4 April, 1942, defendant Todd, who was a soldier, left Fort Bragg, in company with F. C. Bonner, to go to Todd's home near Dufford, S. C. The two secured rides to Floyds Cross Roads, S. C., and after meeting with some friends, including Junior Fowler and Todd's half-brother, Joe McDaniel, Todd and McDaniel went to their home and ate supper. Todd's statement relates the subsequent events, as follows:

"After we ate supper it was around 8:30 p.m. Joe McDaniel and I then left to go see some girls living at Cedar Creek, S. C., which is about a mile and a half from home. We stopped a short distance from home where I had a bottle with some whiskey in it hid. We drank the whiskey in the bottle and throwed the bottle down. About that time we saw a car coming around the curve from towards Nichols, S. C. We stepped outside the road for the car to pass and the car came up and stopped. F. C. Bonner and Junior Fowler was in the car. It was a new Model Ford Coupe. F. C. Bonner was driving. F. C. Bonner said let's go to ride. As I opened the door on the right-hand side, F. C. Bonner said, 'Todd, you drive, you are a better driver than I am.' F. C. Bonner said that he ran up with an old friend of his in Mullins, S. C., and borrowed this car. I said you got a ready job there, we better go take our girls for a ride. F. C. Bonner said that he had to go to Aynor, S. C., let's go there.

"We stopped at a service station below Aynor, S. C., and got some gas. We then went to Homewood, S. C., near Conway, S. C., and turned left, and F. C. Bonner said keep going. When we got to Green Sea, S. C., F. C. Bonner said, 'Keep straight ahead.' When we got to Tabor City, N. C., F. C. Bonner said, 'Take a dirt street around town.' We came out at the highway going toward Whiteville, N. C. We came on to (till) we got to a junction near Whiteville, N. C., and F. C. Bonner said 'Turn right.' We turned right until we passed a station on the right. F. C. Bonner said he knew some girls that used to work there. We turned around a short distance beyond the station and F. C. Bonner said, 'Drive back by slowly.' After we passed the station the second time, F. C. Bonner said, 'Turn around and let's stop back by and get a package of cigarettes.' I stopped out of the driveway at the station and

F. C. Bonner and Junior Fowler went into the station. In about a minute I heard several shots in the station and F. C. Bonner and Junior Fowler came running to the car. F. C. Bonner had something bright that looked like a pistol in his hand. I said, 'What in the hell took place in there?' F. C. Bonner said, 'Drive, damn it, or I will shoot you.'

"We left, going towards New Brunswick, N. C. When we got beyond New Brunswick, Junior Fowler said, 'We had to shoot him.' F. C. Bonner said, 'And we killed hell out of him, too, but we got the money.' I said, 'It is a damn fool that will kill a man for money.' I said, 'You know a fellow in that kind of place wouldn't have much money on him.' Joe McDaniel said, 'What did you shoot him for?' F. C. Bonner said, 'We had to; Junior was shooting him and I had to.'

"We turned off a dirt road beyond New Brunswick. We went back into the Tabor City highway. We turned off a dirt road before we got to Tabor City and went back into S. C. We stopped in about a mile from Junior Fowler's home. We all got out of the car. I got out on the left and F. C. Bonner, Junior Fowler and Joe McDaniel got out on the right. I took another drink of whiskey. F. C. Bonner had some money in his hand. He pushed it across the seat to me and said, 'Here is your part.' I said, 'No thanks, I don't want it.' He said, 'To hell you don't.' I pushed the money back across the seat to him. We four got back in the car and went on to Junior Fowler's mail box and put him out and went on next home. We went to Floyds Cross Roads and turned in next to my house. Before we got to Joe Meyers' house, F. C. Bonner said, 'Stop the car and let me drive, this is a stolen car.' I had been driving the car all the time since I got in the car near my home. I looked on the driver's license and saw the car was in Archie Buffkin's name.

"F. C. Bonner said that he would have to drive the car in the river or some place to destroy it. I wouldn't let him. I told him to put the car where the old man could find it. We, F. C. Bonner, Joe McDaniel and I, got back in the car and went to my mail box. I got off and got my T Model and went on to Sandy Bluff, S. C., and got Joe McDaniel and F. C. Bonner and brought them back."

The jury returned verdict of guilty of murder in the first degree as to the defendant Todd, and from judgment on the verdict imposing sentence of death, he appealed, filing separate record in this Court.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*Lyon & Lyon for defendant.*

DEVIN, J. The defendant assigns error in the denial by the court below of his motion for judgment as of nonsuit. He contends that the

evidence offered by the State tended to exculpate rather than incriminate him, and was insufficient to warrant submission of the case to the jury or to support the verdict and judgment.

The only evidence offered by the State which in any way connected this defendant with the crime charged in the bill of indictment was the defendant's own statement to the officers. There was no other evidence. The statements or confessions of the other defendants who were tried at the same time were not competent against this defendant, and properly were excluded from the consideration of the jury as to him. While in his statement this defendant admits he drove the automobile to the scene of the homicide, and that the two who perpetrated the crime got out of the automobile, entered the filling station of the deceased and shot him to death, the entire statement tends to relieve him from the imputation of guilty knowledge of their purpose, and fails to afford any substantial evidence that he participated in or aided and abetted in the perpetration of the robbery or murder. His statement is to the effect that by direction of Bonner he drove the automobile by the filling station of the deceased, because Bonner said he knew some girls who used to work there, and was later told to stop for the purpose of getting some cigarettes; that shortly after Bonner and Fowler had entered the filling station he heard pistol shots, and the two ran out, got in the car, and, with threats of shooting him, ordered him to drive away. While the State by offering this statement was not precluded from showing that the facts were different, no such evidence was offered, and the State's case was made to rest entirely on the statement of the defendant, which the State presented as worthy of belief. *S. v. Freeman,* 213 N. C., 378, 196 S. E., 308; *S. v. Edwards,* 211 N. C., 555, 191 S. E., 1; *Smith v. R. R.,* 147 N. C., 603, 61 S. E., 575; *S. v. Mace,* 118 N. C., 1244, 24 S. E., 798.

Upon a motion for judgment of nonsuit the evidence is to be considered in the light most favorable for the State, but evidence which merely suggests the possibility of guilt or which raises only a conjecture is insufficient to require submission to the jury. *S. v. Shelnutt,* 217 N. C., 274, 7 S. E. (2d), 561; *S. v. Madden,* 212 N. C., 56, 192 S. E., 859; *S. v. Montague,* 195 N. C., 20, 141 S. E., 285; *S. v. Sigmon,* 190 N. C., 684, 130 S. E., 854; *S. v. Vinson,* 63 N. C., 335. Here, we think the defendant's statement fails to afford substantial evidence of his guilt of the offense charged in the bill of indictment, and rather tends to exculpate him, and hence his motion for judgment of nonsuit should have been sustained. *S. v. Cohoon,* 206 N. C., 388, 174 S. E., 91; *S. v. Fulcher,* 184 N. C., 663, 113 S. E., 769.

In *S. v. Cohoon, supra,* where the charge was embezzlement, the State relied for conviction upon statements contained in an affidavit which the defendant in that case had theretofore made. Since the material por-

tions of the affidavit tended to free the defendant from the imputation of guilt, it was held that the evidence was insufficient to sustain the verdict. In the language of the present *Chief Justice* in *S. v. Fulcher,* 184 N. C., 663, 113 S. E., 769, "We are of opinion that when a complete defense is established by the State's evidence a defendant should be allowed to avail himself of such defense on a motion for judgment as of nonsuit."

On the present record, we hold that the defendant Todd was entitled to have his motion for judgment of nonsuit sustained. C. S., 4643.

Reversed.