STATE v. DAVID WILLIAM TOLBERT.

(Filed 4 June, 1954.)

**1. Criminal Law § 42f—**

The State is not precluded from showing the facts to be otherwise than as stated in the declarations of a defendant, even though the State itself introduces testimony of such declarations, but when the State offers no evidence *contra*, it presents such declarations as worthy of belief.

**2. Criminal Law § 52a (2)—**

The introduction by the State of testimony of exculpatory declarations made by the defendant does not warrant nonsuit when the State introduces substantive evidence in contradiction of such declarations, but when the State offers no evidence in contradiction of the wholly exculpatory declarations or statements of defendant, the defendant is entitled to avail himself of such defense by demurrer to the evidence under G.S. 15-173.

**3. Homicide § 25—Evidence held insufficient to sustain verdict of guilty of manslaughter.**

The State's evidence tended to show that deceased was fatally injured by blows on the head with a blunt instrument, with evidence of a struggle near the scene where the body was found, and that defendant made contradictory statements as to whether he knew deceased, and as to the clothes defendant was wearing on the night in question. The State further introduced testimony of defendant to the effect that defendant was driving deceased around in his car to sober him up, that he drove to a place near the scene where the body was found, turned his car around, and that there, after an altercation, defendant struck deceased in the face with his fists four or five times, but that defendant then drove off in his automobile, leaving deceased standing in the woods. *Held:* Whether defendant was the person who thereafter assaulted deceased with the blunt instrument is left to conjecture, and in the absence of evidence tending to prove that defendant was at the scene of the homicide at or about the time it was committed, in contradiction of his declarations, defendant's demurrer to the evidence should have been sustained.

APPEAL by defendant from *Armstrong, J.,* November Criminal Term 1953, GUILFORD (Greensboro Division).

Criminal prosecution under a bill of indictment in which it is charged that defendant did feloniously kill and murder one Clarence Tate Newman.

On the night of 23 May 1953, the defendant, Burton Eugene Grubb, and Newman, the deceased, were together in Greensboro, looking for women they could "pick up" and drinking beer. Newman became perceptibly intoxicated. About 11 :30 p.m. he and defendant got on defendant's car parked near the A & C Grill. Defendant tried to persuade him to get out, but he would not do so. Defendant then drove off to give him some fresh air and "sober him up."

The next morning Newman was found at the foot of a fill on Phillips Avenue, about ten feet from the north side of the Avenue, near a small stream that runs through a culvert under the Avenue. The stream was not flowing. There was a pool of water about twenty steps from the fill. Bushes on the side of the fill were twisted and disturbed by tracks sliding down the fill. Whether the tracks on the side of the fill were fresh tracks is not disclosed. "It looked like some large object had been wallowed around in the hole." His face, particularly on the left side, had been badly bruised with some blunt instrument about the size of a two-by-four. His ears were red and puffed up. There was a brush wound on his shoulder and shoulder blade. Except for this last wound, there was no evidence of violence below his shoulder. He died on 25 May.

Acting on information furnished by defendant, the officers located a dirt road near the fill that leads off from the north side of Phillips Avenue and the place where an automobile had backed and turned around, some 67 steps from the highway. The road was rough and there was a mud puddle about ten feet long, full of water, in the middle of the road. About nine steps from where the auto had turned "the ground was torn up; that is, roughed up. The pine needles were pushed back in several places. Something had been dragged from the little pine tree out across the road." Just across the road they found a blood spot two or three inches in size. There were tracks—not too visible—across honeysuckle. "Then, at this creek bank, there were a lot of bushes that had been pushed down, and the little bank where the water had accumulated there was messed up . . . there were no tracks between the body of water and the body—no scuffed-up marks of any kind. Mr. Newman's body was wet. It had been soaking wet . . . The body was not lying in water at the time I found it. It was up on a little rock . . . There was mud on his clothing."

Defendant told the officers he did not know Newman, and did not know he had been beaten up; that he had been riding around with some men, but did not know their names; that they had been drinking. He later admitted he knew Newman. He made a false statement about the clothes he wore the night before. While officers were talking to defendant, his father asked him if Newman was the man who had taken $50 from him on a former occasion.

The coroner, a medical expert, made a post-mortem examination of Newman's body and testified that he died from a severe hemorrhage of the frontal and temporal lobes of his brain.

The foregoing is a summary of all the material evidence of facts and incriminating circumstances the State could produce aside from statements made by defendant to which reference will be made in the opinion.

The jury returned a verdict of "Guilty of Manslaughter." The court pronounced judgment on the verdict and defendant appealed.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*T. Glenn Henderson, Percy Wall, and Robert S. Cahoon for defendant appellant.*

BARNHILL, C. J. It is axiomatic with us that when a complete defense is made out by the State's evidence, a defendant should be allowed to avail himself of such defense on a demurrer to the evidence under G.S. 15-173. This is true even when the exculpating evidence is in the form of statements of defendant offered in evidence by the State. *S. v. Watts,* 224 N.C. 771, 32 S.E. 2d 348; *S. v. Todd,* 222 N.C. 346, 23 S.E. 2d 47; *S. v. Robinson,* 229 N.C. 647, 50 S.E. 2d 740.

The State, by offering evidence of the declarations or admissions of a defendant, is not precluded from showing that the facts are other than as related by him. *S. v. Robinson, supra.* And when the substantive evidence offered by the State is conflicting—some tending to inculpate and some tending to exculpate the defendant—it is sufficient to repel a demurrer thereto. *S. v. Edwards,* 211 N.C. 555, 191 S.E. 1; *S. v. Todd, supra; S. v. Robinson, supra.*

When, however, the State's case must rest entirely on declarations made by defendant, and there is no evidence *contra* which does more than suggest a possibility of guilt or raise a conjecture, demurrer thereto should be sustained. *S. v. Robinson, supra,* and cases cited. In such case, the declarations of the defendant are presented by the State as worthy of belief, *S. v. Watts, supra,* and when they are wholly exculpatory, the defendant is entitled to his acquittal. *S. v. Cohoon,* 206 N.C. 388, 174 S.E. 91; *S. v. Robinson, supra.*

When the evidence relied on by the State is analyzed and appraised in the light of these principles of law, it becomes apparent, in our opinion, that the defendant's demurrer to the evidence should have been sustained.

There was evidence of some minor incriminating circumstances, and the testimony tends to show that the defendant made false and contradictory statements shortly after the homicide. In the main, however, the foregoing statements of facts represents a summary of all the testimony the State was able to produce aside from the evidence of statements the defendant made to the officers. While it may point the finger of suspicion at the defendant, it must be conceded that it is wholly insufficient to support the verdict of the jury.

The State must rest its case upon the statements made by the defendant about which the officers testified. Eliminate those statements and there is

no case. If his statements and admissions will not support a verdict against him, but, instead, tend to exculpate him, then the exception to the denial of his demurrer to the evidence was well advised. *S. v. Watts, supra; S. v. Todd, supra; S. v. Robinson, supra.*

So then, the decisive question is this: Does the evidence of statements made by defendant, which the State presented as worthy of belief, make out a complete defense and entitle him to acquittal? We are inclined to the view that it does.

After wandering around with deceased and Grubb from beer stand to beer stand, looking for women, during the early hours of the night, defendant took deceased to ride in an attempt to sober him and persuade him to go home. After reaching Phillips Avenue, thinking that deceased had agreed to go home, the defendant drove off on a dirt road to avoid turning around on the highway. He went about 67 steps and backed into a narrow intersecting road. His rear wheels ran into holes in the side road, and he stopped. Deceased, for personal reasons, got out. Deceased had a bottle of liquor. Defendant declined a drink and said that deceased could not have liquor on his (defendant's) automobile. Deceased then went around the automobile to defendant's side, opened the door, and said he was going to cut defendant's throat. Defendant jumped out and struck deceased in the face with his fists four or five times. He knocked deceased down. When deceased got up, the defendant ran to his automobile and drove off, leaving deceased standing in the woods.

Thereafter, someone assaulted deceased with some blunt instrument which has never been found, and dragged him some distance to the culvert at the foot of the avenue fill. Who committed this crime the record fails to disclose. It may have been the defendant. As to this we may only surmise. The fact remains that the evidence offered by the State leaves the deceased standing in the woods as defendant departed on his automobile to return to his home in Greensboro. Thus the State's evidence takes the defendant from the scene of the homicide before it occurred.

There is no testimony independent of these declarations which tends to place defendant at the scene of the homicide at or about the time it was committed, and this testimony offered by the State exculpates him. Hence the *Watts, Todd,* and *Robinson cases* above cited are controlling.

Furthermore, the evidence of the coroner, offered by the State, negatives any suggestion that the deceased was fatally injured by the blows defendant admittedly struck with his fists. There was a fracture at the base of the brain which extended through the bone. The left side of his face was bruised and blue. After his scalp was retracted, the coroner discovered eight distinct bloody contusions on the surface of the skull. They appeared to have been made by a blunt instrument. There had been

a very extensive brain hemorrhage extending over the frontal and both temporal lobes of the brain which caused his death.

It follows that the order of the court overruling defendant's demurrer to the evidence must be

Reversed.