STATE v. WILLIE PHELPS.

(Filed 21 September, 1955.)

**1. Automobiles § 28a—**

> A person whose culpable negligence proximately causes death of another is guilty of manslaughter, or, under some circumstances, of murder.

**2. Same—**

> Culpable negligence in the law of crimes is such recklessness or carelessness, proximately resulting in injury or death of another, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others, and is more than mere actionable negligence in the law of torts.

**3. Same—**

> An intentional, willful or wanton violation of a statute or ordinance designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence.

**4. Automobiles § 28b—**

> In a prosecution for manslaughter mere proof of culpable negligence does not establish proximate cause, and the State must show that the culpable negligence relied on was a proximate cause of death in order to convict the tort-feasor of manslaughter.

STATE *v.* PHELPS.

**5. Same—**

Culpable negligence of defendant need not be the immediate cause of the death in order to hold defendant guilty of manslaughter, but defendant may be accountable if the direct cause of death is the natural result of his criminal act.

**6. Same—**

Contributory negligence is no defense in a prosecution for manslaughter predicated upon culpable negligence, but contributory negligence is relevant and material solely upon the question of whether the culpable negligence was the proximate cause of the death.

**7. Automobiles § 28c—Evidence held sufficient to sustain conviction of defendant of manslaughter based upon culpable negligence in operation of automobile.**

The testimony of witnesses as to speed, and the testimony of defendant that he struck the deceased as he walked from behind a passing truck, but did not know from which side deceased came nor which way he was going, together with the physical facts at the scene of the accident, *held* to show that defendant was driving 75 to 80 miles per hour in violation of G.S. 20-141 (4), that he struck a pedestrian from the rear when defendant's left wheels were on or over the center of the highway in violation of G.S. 20-146, and that defendant was not keeping a reasonably careful lookout in the direction he was traveling, and the evidence is sufficient to overrule defendant's motion to nonsuit in a prosecution for manslaughter for the death of the pedestrian proximately resulting from the accident.

**8. Criminal Law § 81b—**

Where the charge of the court is not in the record it will be presumed that the court correctly charged the jury as to the law arising upon the evidence as required by G.S. 1-180.

**9. Criminal Law § 42f—**

The fact that the State offers in evidence an exculpatory statement of defendant does not prevent the State from showing that the facts were otherwise.

**10. Criminal Law § 52a (4)—**

Where the exculpatory statement of defendant offered by the State is contradicted by the State's evidence as to the physical facts at the scene and is further contradicted by, or repugnant to, other statements of defendant offered in evidence, nonsuit is properly denied upon the conflicting evidence.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.

APPEAL by defendant from *Clifton L. Moore, J.,* March Term 1955 of GATES.

Criminal prosecution for manslaughter.

Verdict: Guilty.  Judgment: Imprisonment in the State's Prison.

Defendant appeals, assigning error.

*William B. Rodman, Jr., Attorney General, and T. W. Bruton, Assistant Attorney General, for the State.*
*Carter Jones and John B. McMullan for Defendant, Appellant.*

PARKER, J. The defendant introduced no evidence. He has one assignment of error: the failure of the Trial Court to sustain his motion for judgment of nonsuit made at the close of the State's case.

James Edward Monds, a 16 year old boy, lived about a mile north of the village of Corapeake on North Carolina State Highway No. 32. After 6:00 p.m. on 8 December 1954, he left home to walk to Corapeake to obtain a ride with some of his classmates to Sunbury High School. Woodrow Polson driving a truck on this highway to Corapeake passed Monds about 6:20 p.m. Monds was walking south on the east side of the pavement about 3 feet from the shoulder. About an hour and a half later Polson saw Monds' dead body lying on the west side of the highway, a good distance from where he saw him walking.

State Highway No. 32 is one of the main roads of travel from North Carolina to Virginia. Joe Eason's home is on the east side of this highway about a mile north of Corapeake. Between 6:30 and 7:00 p.m. on the same night he was in his back yard about 50 or 75 feet from the highway, and saw two automobiles travelling south about 75 or 80 miles an hour each and about 100 yards apart. On cross-examination he said he was guessing at the speed. He watched these automobiles until they reached a wooded area 400 to 500 yards south, which blocked his vision. After he lost sight of the automobiles he heard "a slam" in the direction where he last saw the automobiles. He ran to the highway, and saw down the highway to the south an automobile with tail lights burning parked on the west side of the highway. After he heard the "slam" two automobiles passed his house going south. About 30 minutes later he went south on the highway to the place where he saw the parked automobile and heard the "slam," and saw lying on the west side of the highway the dead body of Monds. Eason lives about one-half mile north from where he saw the body.

The night was clear and cold: snow was in the highway ditch, but the pavement and shoulder were clear and the road dry. Between 7:15 and 7:30 p.m. A. S. Godwin, a State Highway Patrolman, arrived at the scene, and saw Monds' dead body lying on the west shoulder at the edge of the pavement. At that point the highway was straight for one-half mile in each direction. The pavement was 20 feet wide and the shoulders 7 feet. Upon arrival Godwin saw the defendant Phelps and his 1954 Pontiac automobile parked in the west lane of traffic pointed south and 77 feet north of Monds' body. A Ford automobile belonging to Sidney Parker was parked on the west shoulder of the highway about 25 feet south of

the body. A leakage of antifreeze could be traced back in a northerly direction from the Pontiac about 180 feet. The antifreeze first "hit" the highway 3 feet to the left of the center line and for 50 or 60 feet this antifreeze was in the east lane of traffic. 185 feet north from where the leakage of antifreeze began, there were easily seen blood spots in the center line of the highway in an easterly direction. There was a shoe on the pavement in the east lane of traffic south of the blood spots, and about 85 feet north of the point where the antifreeze leakage began, and a button with a piece of apparel attached, matching a missing button from Monds' shirt, in the same lane of traffic about 35 feet south of the shoe. A key was found on the east shoulder 18 inches from the pavement and 250 feet north of the parked Pontiac. Monds' mother identified the shoe and key as her son's property. The distance from the beginning of the blood spots to the parked Pontiac was 365 feet. Godwin found undercoating from under the left front fender of the Pontiac 18 inches on the left or east shoulder 268 feet north of where the Pontiac was parked: the undercoating was east and south of the blood spots. Undercoating was found missing under the left front fender of the Pontiac.

The left front fender of the Pontiac had been hit with sufficient impact to move it back enough to close the side door, so it could not be opened on the driver's side. The hood was bent. The grille was pushed back into the radiator, and the radiator into the fan puncturing it. Around the damaged area there was a considerable amount of blood in spots. Blood spots were visible on the front fender, bumper, grille, hood, the lower left side of the windshield, and down the left side all the way to the tail light.

There was no damage to the front or side of the Ford. The only visible signs on the Ford were blood spots underneath and around the vicinity of the left front wheel on the undercarriage. The left front wheel had a considerable amount of blood on the inside. None of its mechanism was bent or damaged.

There were no skid marks made by the tires of the Pontiac so that its course could be traced. Patrolman Godwin testified: "I found no evidence that Phelps' car had been to the left of the center of the highway north of the point where I found the blood spots. The only physical evidence which I found that Willie Phelps' car was at any time on the left of the center of the highway was south of the blood spots, and between the blood spots and where his car was parked."

H. E. Butcher, an embalmer from Suffolk, Virginia, examined Monds' body the night he was killed. He testified that Monds had two compound fractures on both legs with the bones protruding through the skin out forward about two inches from the knee: evidently, he was struck

in the back to force the bones out that way. He had a broken neck, indication of a fractured skull and a bruise on his buttocks.

The defendant Phelps made the following statement to Patrolman Godwin: He was driving his Pontiac south, he was alone in the car, and a car 200 to 300 yards behind had been following him several minutes. He was meeting a truck travelling north which dimmed its lights. That Monds walked from behind the truck, he did not know from which side he came, nor where he was going, and that he struck him in his right lane, west lane, near the center line. That the first time he saw Monds was immediately following the passing of the truck, and that Monds appeared from behind the truck immediately after it passed. That he was right on Monds when he first saw him, and stopped as soon as possible. That his car was practically new and nothing was wrong with it. Parker's Ford passed him on the left after he struck Monds. That when his Pontiac came to a stop Monds' body was in the position where it was when Godwin arrived, and Monds was dead. At no time did he cross the center line into the east lane of traffic.

There was evidence tending to show that Monds' body was dragged by Parker's Ford from a point far northwardly on the highway to where it came to rest. There were blood smears for 225 feet on the pavement caused by dragging the body. The beginning of the dragging started off with small blood spots and shoe marks and there was a shoe close by. A warrant was sworn out against Parker for manslaughter, which is pending.

The shoe, button, key and undercoating from the Pontiac were north and east of the skidmarks of Parker's Ford.

Culpable negligence, from which death proximately ensues, makes the actor guilty of manslaughter, and under some circumstances guilty of murder. *S. v. Cope,* 204 N.C. 28, 167 S.E. 456; *S. v. Wooten,* 228 N.C. 628, 46 S.E. 2d 868; *S. v. Norris,* 242 N.C. 47, 86 S.E. 2d 916.

Culpable negligence in the law of crimes necessarily implies something more than actionable negligence in the law of torts. *S. v. Stansell,* 203 N.C. 69, 164 S.E. 580; *S. v. Cope, supra; S. v. Becker,* 241 N.C. 321, 85 S.E. 2d 327.

"Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others. . . . An intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence." *S. v. Cope, supra.*

Mere proof of culpable negligence does not establish proximate cause. To culpable negligence must be added that the act was a proximate

cause of death to hold a person criminally responsible for manslaughter. *S. v. Everett,* 194 N.C. 442, 140 S.E. 22; *S. v. Satterfield,* 198 N.C. 682, 153 S.E. 155; *S. v. Lowery,* 223 N.C. 598, 27 S.E. 2d 638.

We said in *S. v. Minton,* 234 N.C. 716, 68 S.E. 2d 844: ". . . the act of the accused need not be the immediate cause of the death. He is legally accountable if the direct cause is the natural result of the criminal act." See also 26 Am. Jur., Homicide, Sec. 48.

G.S. 20-146 provides that "upon all highways of sufficient width, except upon one way streets, the driver of a vehicle shall drive the same upon the right half of the highway . . ."

In December 1954 it was unlawful to drive a passenger car at a speed in excess of 55 miles per hour. G.S. 20-141 (4).

Statutes regulating the operation of automobiles were designed to prevent injury to persons and property and to guard against collisions resulting in injuries and death. *S. v. Swinney,* 231 N.C. 506, 57 S.E. 2d 647.

Contributory negligence is no defense in a criminal action. *S. v. Cope, supra; S. v. Eldridge,* 197 N.C. 626, 150 S.E. 125. It is however, relevant and material on the question whether the defendant is guilty of negligence. *S. v. Oakley,* 176 N.C. 755, 97 S.E. 616.

The State's evidence, and the reasonable inferences to be drawn therefrom, considered in the most favorable light, present this case: The defendant's automobile passed Eason's house at the dangerous and unlawful speed of 75 to 80 miles per hour, and in less than one-half mile his car struck Monds. The defendant said he struck Monds as he walked from behind a passing truck. The defendant also said he did not know from which side Monds came, nor which way he was going. The statement of Eason on direct examination that the speed of the car, in his opinion, was 75 to 80 miles per hour, and his statement on cross-examination that he was guessing at the speed, is a matter of credibility. The mute evidence of extensive damage to the front end of the defendant's car, of the blood spots on the front of the car extending down its left side to the tail light and of his car coming to rest 365 feet down the road from where the blood spots began, tends to show that the defendant had not slackened his speed of 75 to 80 miles per hour up to the moment of striking Monds, and that he was violating G.S. 20-141 (4). 365 feet north from where the defendant's car stopped blood spots were easily visible in the center line of the highway in an easterly direction—these were the first blood spots on the highway—, which would indicate that at the time defendant's car struck Monds it was travelling with its left wheels on the center line on the pavement, or over this line to the east, in violation of G.S. 20-146. This makes

out a case of culpable negligence. *S. v. Webber,* 210 N.C. 137, 185 S.E. 659; *S. v. Swinney, supra.*

The defendant testified that his car struck Monds as he walked from behind the passing truck, and that his car did not cross the center line into the east lane of traffic. The defendant did not say how far the truck had gone, when Monds walked from behind it. He did say, however, he did not know from which side Monds came or which way he was going, which would seem to negative the proposition that the defendant was keeping a reasonably careful lookout in the direction he was travelling. Be that as it may, the physical evidence of the first blood spots easily seen in the center line of the pavement in an easterly direction tends to show that the defendant's car had its left wheels on, or over the center line to the east at the moment of impact. The evidence tends to show that Parker's Ford dragged Monds' body 225 feet, and that the beginning of the dragging started off where there were small blood spots and shoe marks with a shoe close by. The shoe was found on the pavement about 85 feet north of the point where the antifreeze leakage from the defendant's car began. This leakage began about 180 feet north of where the Pontiac stopped, and the blood spots in the center line of the pavement in an easterly direction were about 185 feet north of the leakage. The above facts would seem to indicate that the defendant's car carried Monds' body some 100 feet after striking it, before Parker's car began dragging it, that the defendant was not keeping a reasonably careful lookout in the direction he was travelling to avoid striking Monds, who was not in the lane of traffic of the defendant when struck, and that the impact of defendant's car with Monds was a proximate cause of his death.

The court's charge has not been brought forward in the record. Therefore, it is presumed that the jury was charged correctly as to the law arising upon the evidence, as required by G.S. 1-180. *S. v. Harrison,* 239 N.C. 659, 80 S.E. 2d 481.

The State offered in evidence the statement of the defendant, but that does not prevent the State from showing that the facts were different. *S. v. Simmons,* 240 N.C. 780, 83 S.E. 2d 904. The defendant's statement standing alone may tend to exculpate, but the State's case does not rest entirely on such statements. The physical facts, in conflict with the defendant's statements, and the defendant's statement that "he did not know from which side he (Monds) came, nor which way he was going" in contradiction to his statement that "the Monds boy walked from behind the truck" undoubtedly carried considerable weight with the jury.

When the substantive evidence offered by the State is conflicting, some tending to incriminate and some seeming to exonerate the defend-

ant, it is sufficient to repel a motion for judgment of nonsuit. *S. v. Tolbert*, 240 N.C. 445, 82 S.E. 2d 201; *S. v. Robinson*, 229 N.C. 647, 50 S.E. 2d 740.

The jury found the defendant guilty. There is evidence to support the findings. *S. v. Cope, supra; S. v. Stansell, supra; S. v. Satterfield, supra*. The motion for judgment of nonsuit was properly overruled. We find

No Error.

WINBORNE and HIGGINS, JJ., took no part in the consideration or decision of this case.