STATE v. BENNY MOORING.

(Filed 17 October, 1956.)

**Criminal Law § 52a(2)—**

The State is not precluded from showing the facts to be otherwise than as stated by one of its witnesses, and where in no aspect does the State's evidence establish a complete defense, defendant's motion to nonsuit on that ground is properly denied.

JOHNSON, J., not sitting.

APPEAL by defendant from *Bone, J.,* March Criminal Term 1956 of LENOIR.

Criminal prosecution upon a bill of indictment charging assault with a deadly weapon with intent to kill resulting in serious injury, a violation of G.S. 14-32.

Plea: Not Guilty. Verdict: Guilty of an assault with a deadly weapon.

From a judgment of imprisonment for 12 months to be assigned to work the public roads, defendant appeals.

*George B. Patton, Attorney General, and T. W. Bruton, Assistant Attorney General, for the State.*
*White & Aycock for Defendant, Appellant.*

PER CURIAM. The State introduced evidence: the defendant none. Defendant assigns as error the denial of his motion for judgment of nonsuit. However, defendant falls into error in contending that the State's evidence made out for him a complete defense. Of course, if it had, the case should be reversed. *S. v. Tolbert,* 240 N.C. 445, 82 S.E. 2d 201.

On the night of 28 June 1955 Walter Clark and three companions, all marines stationed at Camp Lejeune, were traveling in a car from Jacksonville to Kinston, and stopped at defendant's filling station and store to buy gasoline. This station and store had connected with it a dwelling compartment, in which defendant, his father and defendant's wife lived. All four went into the store. They met inside two marines in civilian clothes. Clark had been drinking beer before his arrival. In the store they bought and drank several "shots" of whiskey at 50 cents a "shot." Clark was "pretty high" from drinking, "but not to where I didn't actually know what I was doing." About 30 minutes after their arrival, all the marines left. Clark was the last one to go out. Clark testified: "I started out and the next thing I remember something caught me in the leg. I went down. . . . While we were in the place of business,

there were no harsh words, argument or anything in the way of disorderly conduct on my part, or anything else, that I know of. . . . I was shot in the leg. . . . I heard that I made an effort to knock on the door or attempt to get back in, but I can't say truthfully. I do not have an opinion as to how far I was from the door to this place at the time I fell on the ground after being shot." On cross-examination Clark testified: "I can't swear this defendant shot me. . . . I don't know what I was doing at the time I was struck by a bullet, except I was heading out of the place."

Daniel Monroe, a companion of Clark, testified in substance: Clark was the last marine to come out of the store. He turned around, and started knocking on the door. A person inside asked what he wanted, and he replied he forgot his change. Clark kept pounding on the door, and the lights inside went out. When the first shot was fired Clark was still pounding on the door. After the first shot was fired Clark started staggering away, and when the second shot was fired he fell. Monroe also testified: "Clark was knocking on the door. I hollered at him and he started toward my car. Another shot was fired, and he went to the ground." Clark fell about 10 yards from the door.

Defendant told Thomas H. Sutton, a deputy sheriff of Lenoir County, he shot Clark under these circumstances: "He said they were beating, slamming and cursing on the front of the house like they were going to break in; he said, 'I went to the back, came around and asked them to leave and one of them started for me. I didn't take no sight at all, I just pulled the trigger; I did not intend to hit the man.' "

The State's evidence was presented by the three witnesses above mentioned. The State offered in evidence the statement of the defendant, but that did not prevent the State from showing that the facts were different. *S. v. Phelps*, 242 N.C. 540, 89 S.E. 2d 132.

The State's evidence does not make out a complete defense for the defendant, and was sufficient to carry the case to the jury.

Defendant's other assignments of error, except those that are formal, are to the charge and the judge's failure to charge. A close study of the evidence and the charge shows that the judge fairly and accurately declared and explained the law arising on the evidence given in the case, and these assignments of error are without merit.

The evidence was conflicting. After a fair trial the defendant was convicted by a jury of his peers, and he must abide the consequences of his unlawful act.

No error.

JOHNSON, J., not sitting.