# STATE v. BEULA ROGERS
### AND
# STATE v. EVA FOSTER.

(Filed 18 May, 1960.)

**1. Criminal Law § 98—**

While the probative weight of legally sufficient proof is for the jury, the sufficiency of proof in law is for the court.

**2. Criminal Law § 101—**

Circumstantial evidence is sufficient to be submitted to the jury if it tends to prove the fact in issue or reasonably conduces to such conclusion as a fairly logical and legitimate deduction, and does not merely raise a suspicion or conjecture of guilt.

**3. Same**

In passing upon motion for judgment as of nonsuit in a criminal prosecution, the evidence must be considered in the light most favorable to the State, and it is entitled to every intendment upon the evidence and every reasonable inference to be drawn therefrom.

**4. Same—**

On motion to nonsuit, only the evidence favorable to the State will be considered, and contradictions and discrepancies, even in the State's evidence, do not warrant nonsuit.

**5. Intoxicating Liquor § 5—**

The possession by an individual of intoxicating liquor for the purpose of sale is unlawful in this State.

**6. Intoxicating Liquor § 6—**

The possession of more than one gallon of intoxicating liquor at any one time, whether in one or more places, and whether actual or constructive, is *prima facie* evidence of possession for the purpose of sale. G.S. 18-32.

**7. Intoxicating Liquor § 13c—**

Evidence tending to show that defendants jointly occupied an apartment and that more than two and one-half gallons of taxpaid liquor was found in the apartment and in the car in which they were riding, together with other circumstantial evidence, *is held* sufficient to be submitted to the jury as to each defendant on the charges of unlawful possession of intoxicating liquor and possession of liquor for the purpose of sale.

**8. Criminal Law § 85—**

The introduction by the State of exculpating declarations of a defendant does not preclude the State from showing that the facts are otherwise.

**9. Criminal Law § 101—**

    The fact that substantive evidence offered by the State is conflicting, some of the evidence tending to inculpate and some tending to exculpate defendant, does not warrant nonsuit.

Appeal by defendants Beula Rogers and Eva Foster, respectively, from *Preyer, J.,* at November 29, 1959 Criminal Term, of Guilford—Greensboro Division.

Criminal prosecutions upon separate warrants issued out of Municipal-County Court, Criminal Division of Guilford County, (I) charging each defendant separately with (1) unlawful possession, and (2) possession for purpose of sale five and one-half pints of taxpaid whiskey at 413 O. Henry Boulevard in Greensboro, N. C., and (II) charging each defendant separately with possession for the purpose of sale of two gallons of taxpaid whiskey, and transporting same from place to place against the statute in such case made and provided,—heard and tried upon original warrants in Superior Court upon appeal thereto from judgments of Municipal-County Court, Criminal Division.

And upon trial in Superior Court the State offered evidence substantially as follows:

Officer R. W. Steele as witness for the State testified in pertinent part: " * * * On June 6, 1959 * * * I had occasion to see Eva Alice Foster and Beula Thompson Rogers. I was in car with Officer Meadowbrook and Officer Hart was in car with Officer Ledford. We had secured two search warrants for a Buick automobile and for an apartment, and went to the Perkins Street area. Officer Meadowbrook and I were sitting on Gillespie Street, and the other car was at another location. We were waiting for a 1953 red and black Buick automobile with license AC 2580 to arrive at apartment 6 * * * and waited for them from 8 o'clock until 10:30, at which time the car came * * * and turned into the apartment. We proceeded behind the car * * * and * * * stopped behind it. I got out and read the search warrant to Eva Foster, who was driving the car. Whereupon she asked me 'When do I have to come to court?' * * * When I asked her for the keys to the trunk she stated that she didn't have the key to the trunk, only the switch key * * * Officer Meadowbrook asked her for the switch key * * * and she replied that she did not have that. Beula Rogers in the car with her, and there was no one else in the car. On the rear floorboard of the car I observed a sack containing eight pints of whiskey and a 50-pound bag of crushed ice * * * After the conversation I just related and the finding of the paper sack, Beula Rogers said that the contents of the sack were hers. I asked Eva about the key again, and she stated that the key was left with a

mechanic when she had some work done on the car * * * We told her we had a search warrant and would have to go into the car. Whereupon she stated that one of the neighbors in another apartment kept the key to the car. She went to this door and knocked, but no one came. Then she said 'I believe I have the key under this bucket,' and bent over and came up with the key in her hand. We went back to the car, from which Officer Meadowbrook had removed the rear seat and was taking a sack out of the trunk * * * This sack which contained eight pints of whiskey Officer Meadowbrook was taking * * * from the trunk * * *."

And the witness continued: "Beula stated to Eva 'I thought you took all of the liquor out of the trunk of the car.' We opened the trunk of the car with the key and found other packages, including groceries * * * I then stated that we had a search warrant for the apartment and wanted to go in. They said this was okay with them, whereupon we went to the apartment * * * Officer Meadowbrook found five and half pints of whiskey in the house * * * It was in one of the bedrooms * * * The whiskey was in pint bottles * * *."

And the witness continued: "Eva Foster was questioned and denied living at this address. In searching the house I found a set of keys, car keys, a house key, that type of key, with a key chain with identification on it which read 'Eva Alice Foster, 413 O. Henry Boulevard, Apartment 6.' Officer Meadowbrook showed me a light bill, electric bill, 'Eva Alice Foster, 413 O. Henry Boulevard, Apartment 6' on it. Eva Foster saw this and was asked about the keys and light bill. She stated that the keys were hers and the light bill was in her name. Beula Rogers first stated that Eva was helping her out, but later stated that they were sharing expenses at the apartment * * *."

And on cross-examination the witness testified: " * * * Mrs. Rogers said the sack of liquor and pint of gin on the floorboard was hers. I believe she also told me the liquor and gin found in the house was hers * * *."

On re-direct examination the witness testified: "* * * The whiskey from the floorboard of the car was in one sack. That in the trunk was in another sack. That in the house was not in a sack but was placed in a sack."

Also the testimony of Officer Steele tends to show that all of the whiskey was introduced in evidence, and that comparing same with numbering system utilized at the ABC stores in Greensboro part of the whiskey found in the apartment had numbers which were in sequence with numbers found on the whiskey in the trunk of the car,— that some of the corresponding numbers were bought on June 5 and others on June 6.

. Officer J. J. Hart as witness for the State testified: "* * * the sack from the trunk * * * contained eight pints of taxpaid whiskey. The sacks were taken into the house * * * I was standing there with Beula Rogers. That was the sack that was on the floorboard. It was on the ground by me and Beula Rogers. Beula Rogers stated that that was her whiskey * * * We went into the house and there were five and a half pints found in the house. Beula Rogers and Eva Foster were in the apartment where the apartment search warrant was read. When we searched, Officer Meadowbrook found five and a half pints of whiskey there. On the table was one small drink glass that had the smell of whiskey in it or some alcoholic beverage. There was another glass sitting there and there were six glasses in the sink. They were small, approximately three or four-ounce glasses. The sink was stopped up, with water in it, and six glasses in it. The five and a half pints were found in the bedroom. Beula stated that was her whiskey in the house. Eva contended she did not live there. We asked why we had seen her there on numerous occasions then, and she stated that she was helping Beula out. She wasn't working then * * * I asked her about the light bill in Eva Foster's name and she said she didn't know, that she just put it in her name to help out. There were other statements there with Beula Rogers and also with Eva Foster there. The telephone was listed in Eva Foster's name, and also the key chain, with the address 'Eva Foster, 413 O. Henry Boulevard.' Eva Foster stated that she lived with her father at 1502 E. Market Street * * *."

Then on cross-examination Officer Hart continued his testimony: "* * * Miss Foster told me that the liquor in the back (trunk) of the car was hers, and that's all she had * * * Mrs. Rogers * * * stated, when it was brought out of the trunk: 'I thought you got all of the whiskey out of there.' Mrs. Rogers said that, and she is the one claiming the liquor on the floorboard between the two seats. I had a conversation with Miss Foster and Mrs. Rogers about the light bill and phone bill being in Eva Foster's name. Eva stated that she didn't live there, that she lived with her daddy, a preacher * * * she stated that she was just helping her out * * * Neither of them mentioned * * * At the time the whiskey was seized there was no question there that the whiskey numbers in the trunk of the car corresponded with the numbers in the house also at the time of the arrest * * * the numbers in the trunk of the automobile did run with the numbers in the house at that time. Mrs. Rogers said she got the whiskey in the floorboard of the car and put it there, and that it was hers * * *."

The State rested, and counsel for defendants moved for judgment as of nonsuit. The motion was denied. Defendants excepted.

Defendant's Evidence:    Rev. J. O. Foster, father of Eva, testified, summarily stated: "* * * In June of this year when she was arrested with Mrs. Rogers in this case, she lived nowhere in particular but at my house * * *."

And on cross-examination he stated: "Eva will be 35 years old her next birthday * * *. Yes, I knew that she was staying over at Beula Rogers sometimes * * * I did not know Beula Rogers before my daughter started going with her and staying over there at the apartment. Yes, the phone was listed in her name over there so I could get her when I wanted to. She did not have a phone listed at my house, as far as I know. I've got three phones in my house * * * Yes, she stayed over there (at the apartment) as long as she wanted to * * * Yes, she was over there enough so that I put a telephone over there so I could get in touch with her * * * she had two cars."

And defendant Eva Foster as witness for defendants testified in pertinent part, briefly stated: "* * * On June 6th, 1959, I was in an automobile accompanied by Mrs. Rogers when the police came down there * * * And I had eight pints of bourbon in the trunk of my car * * * I didn't have any other brands in that sack * * * I did not know she (Mrs. Rogers) had put any whiskey in my car that night, but I had a gallon of liquor in the trunk of the car. I knew it was in there. I told Mrs. Rogers, in front of the policemen that I wished she had told me * * * I did not have the liquor in the trunk of my car for the purpose of selling it. * * * I told the officers * * * due to the fact that she (Mrs. Rogers) had done me some favors, I thought it was my duty, since I was able to get the phone, that I get it— she is my friend. Some of my father's money might have put the phone in over there * * * but he didn't put the phone in. The light bill was the same * * * The officers * * * I told them I was just doing that just to help her out * * * I didn't buy any of the whiskey in the apartment."

Defendant Beula Rogers testified: "* * * The five full bottles and the half bottle in my apartment No. 6 on O. Henry Boulevard were mine— my individual liquor. The liquor I bought that evening and put in the car didn't belong to me at all * * * Yes, I had five and a half pints of some kind of beverage in my apartment. Yes, that was mine. Yes, I had eight pints in the sack in the car. I said I had five and a half pints for my own personal use, to do whatever I wanted to do. * * * The apartment was in my name. The phone was in Miss Foster's name, both of us. My name was also in the telephone directory, but it was in her name. The light bill was in Miss Foster's name The reason for this was, as she said, my credit wasn't good * * *."

And the record shows that in Superior Court the cases were submitted to the jury under the charge of the court, and the jury re-

turned verdicts of guilty as charged in each case. And upon the coming in of verdicts, the defendants, through their counsel of record, moved to set the same aside as being against the greater weight of the evidence, and for errors assigned and to be assigned. Motion denied and defendants except in apt time. Whereupon defendants moved in arrest of judgment. Motion denied and the defendants except.

In the two cases against each defendant as above set forth, consolidated for purpose of judgment, the court ordered judgment as to each that she "be confined in the Women's Division of State Prison for a period of 18 months. With the consent of defendant this judgment is suspended for a period of three years" on conditions stated.

Each defendant excepts and gives notice of appeal in open court and appeals to Supreme Court, and assigns error.

*Attorney General Bruton, Assistant Attorney General H. Horton Rountree for the State.*

*T. Glenn Henderson, Robert S. Cahoon for defendants, appellants.*

WINBORNE, C. J. First and foremost, defendants in their assignments of error contend that judgment as of nonsuit should have been allowed for that the evidence is insufficient to be submitted to the jury on the charges set forth in the several warrants on which defendants were tried.

The State, on the other hand, contends that the evidence, both direct and circumstantial, is full and complete and points unerringly to the guilt of the defendants.

In passing upon the legal sufficiency of the evidence so taken when the State relies upon circumstantial evidence for a conviction of a criminal offense, as in the present case, "the rule is that the facts established or advanced on the hearing must be of such a nature and so connected or related as to point unerringly to the defendant's guilt and to exclude any other reasonable hypothesis. *S. v. Stiwinter,* 211 N.C. 278, 189 S.E. 868, and numerous other cases cited in *S. v. Rhodes, ante,* 438.

And while the probative weight of legally sufficient proof is for the jury, the sufficiency of proof in law is for the court. *S. v. Prince,* 182 N.C. 788, 108 S.E. 330.

So in considering a motion for judgment of nonsuit under G.S. 15-173, the general rule, as stated in *S. v. Johnson,* 199 N.C. 429, 154 S.E. 730, and in numerous other cases before this Court, is that "if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in

regard to it, the case should be submitted to the jury," approved in
S. v. Stephens, 244 N.C. 380, 93 S.E. 2d 431. See S. v. Rhodes, supra.

In this connection, it is settled law in this State that in passing upon
a motion for judgment as of nonsuit in criminal prosecutions, the evi-
dence must be considered in the light most favorable to the State, and
it is entitled to every reasonable intendment upon the evidence and
every reasonable inference to be drawn therefrom, and if there be
any competent evidence to support the charge in the warrant, the case
is one for the jury. Contradiction and discrepancies, even in the State's
evidence, are for the jury to resolve, and do not warrant nonsuit.
Ordinarily only evidence favorable to the State will be considered.
See Index to North Carolina Reports, Criminal Law, Sec. 98—foot
notes numbered 800 et seq.

Indeed in this State G.S. 18-32 declares it unlawful for any person
to have or keep in possession for the purpose of sale, except as other-
wise authorized by law, any spirituous liquor, and proof of the pos-
session of more than one gallon of spirituous liquor, at any one time,
whether in one or more places, shall constitute prima facie evidence
of the violation of this section. And possession within the meaning of
this statute, G.S. 18-32, may be either actual or constructive. See S. v.
Buchanan, 233 N.C. 477, 64 S.E. 2d 549, and cases cited.

Applying these principles to the case in hand the Court is of opin-
ion and holds that the evidence is sufficient to support verdict of guilty
of the offenses with which defendants are charged.

Defendants contend that the evidence offered by the State excul-
pates defendants. In this respect, however, the State by offering evi-
dence of declarations or admissions of a defendant is not precluded
from showing that the facts are other than as related by them. And
when the substantive evidence offered by the State is conflicting, some
tending to inculpate and some tending to exculpate the defendant, it
is sufficient to repel a demurrer thereto. See S. v. Tolbert, 240 N.C.
445, 82 S.E. 2d 201.

Indeed, there is evidence of facts and circumstances from which
incriminating inferences may be drawn.

The matters to which other assignments relate have been considered,
and in them prejudicial error is not made to appear.

Hence in the judgments from which defendants appeal there is
found to be

No error.