STATE v. WILLIS JENKINS.

(Filed 15 May 1968.)

**1. Criminal Law § 106—**

If there is more than a scintilla of competent evidence to support the allegations of the indictment, it is the court's duty to submit the case to the jury.

**2. Same—**

When the State's evidence is conflicting, some tending to incriminate and some tending to exculpate the defendant, it is sufficient to repel a motion for judgment of nonsuit, and must be submitted to the jury.

**3. Same—**

A jury is not compelled to believe the whole of a confession, but may, in its sound discretion and in its role as trier of fact, believe a part and reject a part.

**4. Homicide § 21—     Circumstantial evidence of defendant's guilt of homicide held sufficient for the jury although it was conflicting.**

The State's evidence tended to show that the defendant went to the house of a woman with whom he had previously lived, that they fought

intermittently during the night, that defendant remembered hitting her in the face but he stated that she was alive when he left the premises. The woman was found dead the next morning in her bed. There was medical expert testimony that the woman had numerous recent bruises about her face, neck and body, that five of her ribs were completely broken and that the cause of death was the result of the rib fractures and strangulation; the expert also testified that there was methyl alcohol in her blood and that he could not rule out the possibility that the amount of wood alcohol would have been a fatal amount. There was in evidence, also, a statement by defendant, referring to the woman, that "when I go back, I will go for murder." *Held:* The evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of murder in the second degree.

APPEAL from *Mintz, J.* and a jury, December 1967 Session, NEW HANOVER Superior Court. In a valid bill of indictment, the defendant was charged with the capital offense of murder of Sadie Thompson on 5 November 1967.

The defendant entered a plea of not guilty and the solicitor on behalf of the State elected to try him for second-degree murder and not the capital offense.

From a verdict of guilty as to manslaughter, the defendant was sentenced to a term of not less than 14 nor more than 18 years.

The State offered evidence. The defendant offered none.

*T. W. Bruton, Attorney General; Harrison Lewis, Deputy Attorney General; Charles W. Wilkinson, Jr., Staff Attorney and Claude W. Harris, Trial Attorney for the State.*

*O. K. Pridgen, II, for defendant appellant.*

CAMPBELL, J. The defendant challenges the sufficiency of the State's evidence, considered in the light most favorable to the State, and giving to the State the benefit of every reasonable inference fairly to be drawn therefrom, to carry the case to the jury. If there is more than a scintilla of competent evidence to support the allegations, it is the court's duty to submit the case to the jury. *State v. Horner,* 248 N.C. 342, 103 S.E. 2d 694.

The evidence reveals:

Bernice Johnson, a daughter of the deceased, Sadie Thompson, saw the deceased on Saturday night, 4 November 1967, about 8:00 p.m. and then again shortly before 11:00 p.m. When last seen, the deceased appeared to have had some alcoholic beverage to drink. She saw the deceased next on Sunday morning, 5 November 1967, about 9:00 or 10:00 a.m. lying on the bed in her bedroom and the deceased did not answer her call to open the door and let her in. Wilmington police officers were notified and on arrival they found

the deceased dead with her head at the foot of the bed. About 4:00 p.m. Sunday afternoon, 5 November 1967, the defendant was placed under arrest. At that time he was intoxicated and the officers were unable to question him until the next day.

A detective of the City of Wilmington testified that the defendant told him that he went to Sadie's house about 11:00 or 11:30 p.m. Saturday night. Sadie was not at home and he went to a nearby vacant house and sat down on the front porch and waited. A short time later Sadie arrived in a taxicab and went to her front door and tried to open it without success. She then went to a window and ripped the screen on the window, but the window was too high for her to get in and she came back to the front door. She was in a highly intoxicated condition and a Negro man by the name of J. D. Bullard came down the alley by the side of the house and opened the door and let her in. This man left and did not go in the house. The defendant had known Sadie between 12 and 15 years, had lived with her, and had fathered her last two children. After Sadie entered he went to the house and went in and lay down on Sadie's bed. Later, Sadie lay down on the bed and they got to cursing each other and started fighting. The defendant hit Sadie several times in the face and during the fight they rolled off of the bed and on to the floor. The defendant sat straddled of her and hit her several times. Then he got up and got back on the bed and Sadie, likewise, got up on her own power and got back on the bed. He put a blanket over the two of them and dozed off to sleep. Later, the defendant woke up and did not know the exact time but it was somewhere between 3:00 and 4:00 in the morning. He and Sadie got to arguing and fussing again and he then told her: "If you are going to do this, I will get up and leave and go to my apartment." He did get up and went to his apartment and the next thing he heard was that Sadie was dead. The defendant said that Sadie was not dead when he left the house. He said that he had never gotten up this way before and left.

The defendant produced the shirt and vest he was wearing at the time he was with Sadie and these both had blood on them and the defendant stated: "That must be Sadie's blood." When asked about choking the deceased, the defendant said that if he choked her, he did not remember it, but he did remember hitting her in the face.

The deceased, Sadie Thompson, was an alcoholic.

The State also offered the testimony of Nathan Hawkins who testified that he had known the defendant something over 30 years and had known the deceased, Sadie Thompson, for 12 or 13 years. This witness cared for the two little girls of the deceased and the defendant. About a month before the deceased was found dead, this

witness had a conversation with the defendant and it was at a time when the defendant and the deceased had been fighting. This witness told the defendant that he should stop acting that way before he got in trouble. This witness testified that to this admonition the defendant stated: "I ain't going to pull any more time for Sadie Thompson, for her to get a welfare check and drink it up. When I go back, I will go for murder." And again the defendant stated: "I am not going back and make sixty days or ninety days or more for her to get welfare check off of me and drink wine."

The State also offered in evidence the testimony of Dr. J. F. Lewis, a pathologist who performed an autopsy on Sadie Thompson on Monday, 6 November 1967. He testified that the autopsy revealed numerous recent bruises and hemorrhages about the skin, neck, shoulders, arms and left thigh and a bruise mark across her neck. There were hemorrhages into the soft tissue around the base of her neck, around her windpipe on both the front and the side and along the small bones immediately above the windpipe. She also had five ribs completely broken on the right side. The toxicological examination revealed no significant level of ethyl alcohol in her blood but there was some methyl alcohol. This doctor further testified: "In my opinion, her death was due to combination of rib fractures and strangulation." The doctor testified that the methyl alcohol is commonly referred to as wood alcohol and that it is poisonous. He testified that the concentration he found from the blood analysis was 178 milligrams per cent. The doctor testified that it would be very difficult for him to say whether or not that per cent of methyl alcohol would be fatal to the particular person, Sadie Thompson, and that he could not rule out the possibility that that amount of wood alcohol would be a fatal amount.

We think the present case is distinguishable from State v. Tolbert, 240 N.C. 445, 82 S.E. 2d 201, and that this case is controlled by State v. Horner, supra, where it is stated: "When the State's evidence is conflicting — some tending to incriminate and some to exculpate the defendant — it is sufficient to repel a motion for judgment of nonsuit, and must be submitted to the jury. * * * A jury is not compelled to believe the whole of a confession. The twelve are the triers of fact, and may, in their sound discretion, believe a part and reject a part."

We have reviewed the entire record and conclude that the defendant has had a fair and impartial trial, free of any prejudicial error and that the case was properly submitted to the jury.

Affirmed.

BROCK and PARKER, JJ., concur.